### WOLF *v.* STIX.

1. If goods sold by a debtor with intent to defraud his creditors are attached as his property in a chancery suit to recover a debt and set aside the sale, which is brought against him and the purchaser, and the latter, with sureties, executes to the complainants a replevin bond, authorized by statute, and conditioned that he, claiming the goods as his property, will pay the ascertained value of them as expressed in the bond, should he be cast in the suit, and they be decreed to be subject to the attachment, and liable thereunder to the satisfaction of the debt sued for, his liability on the bond is not a debt created by fraud within sect. 5117 of the Revised Statutes, which provides that such a debt shall not be barred by a discharge in bankruptcy; but if the petition in bankruptcy was filed after the execution of the bond, and before the rendition of the decree determining the right of property in the goods, his liability is a contingent one, which, under sect. 5068 of the Revised Statutes, is provable against his estate in the proper bankrupt court.
2. His discharge in bankruptcy releases him from further liability, but does not affect that of his sureties on the bond.

APPEAL from the Circuit Court of the United States for the Western District of Tennessee.

On the 8th of December, 1866, Louis Stix & Co. commenced a suit in the Chancery Court of Shelby County, Tennessee, against Marks, Pump, & Co. and M. Wolf, to recover a debt owing by Marks, Pump, & Co., and to set aside a sale of goods by the latter firm to Wolf, on the ground, as alleged, that it had been made to defraud creditors. In accordance with the

practice in that State, a writ of attachment was sued out and levied upon the goods in the possession of Wolf.

The Code of Tennessee provides that (sect. 3509) "the defendant to an attachment suit may always replevy the property attached by giving bond with good security, payable to the plaintiff, in double the amount of the plaintiff's demand, or, at defendant's option, in double the value of the property attached, conditioned to pay the debt, interest, and costs, or the value of the property attached, with interest, as the case may be, in the event he shall be cast in the suit;" and that (sect. 3514) "the court may enter up judgment or decree upon the bond, in the event of recovery by the plaintiff, against the defendant and his sureties for the penalty of the bond, to be satisfied by delivery of the property or its value, or payment of the recovery, as the case may be." As soon as the attachment was served, Wolf moved the court to ascertain the value of the goods and fix the amount of the bond to be given in replevying them. This was done, and the value ascertained to be $10,000; and on the 24th of December, 1866, Wolf, as principal, and Lowenstein and Helman, as his sureties, filed in the cause their bond, a copy of which is as follows: —

"We, M. Wolf, as principal, and Elias Lowenstein and Leon Helman, as sureties, hereby bind ourselves unto Louis Stix & Co. in the sum of $20,000.

"The condition of the above bond is that, whereas, in the suit now pending in the Chancery Court at Memphis, in favor of said Louis Stix & Co. and against Marks, Pump, & Co., and in which said Wolf is joined as a defendant, an attachment has been issued against said Marks, Pump, & Co. for $18,699.54, besides interest and costs, and has been levied upon a stock of goods and other property as the property of said Marks, Pump, & Co., which were in the possession of said M. Wolf, and were and are claimed by him as his property; and this bond is given by him for the purpose of replevying said stock of goods and other property attached, being, altogether, as it is agreed by the parties, of the value of ten thousand ($10,000) dollars. Now, in the event said M. Wolf shall be cast in said suit, and said stock of goods and other property shall be found and decreed by the court to have been subject to said attachment, and liable thereunder to the satisfaction of the debts of complainants against Marks, Pump, & Co., then and in that

event, should said Wolf pay to complainants, as the court may order and direct, the said sum of $10,000, the value of said stock of goods and other property, with interest thereon from this date, this bond shall be void, otherwise to remain in full force and effect.

"Witness our hands and seals, this —— day of December, 1866.

"M. Wolf.　　　[l. s.]

"Elias Lowenstein.　[l. s.]

"L. Helman."　　[l. s.]

The property attached was thereupon surrendered to Wolf. All the members of the firm of Marks, Pump, & Co. were afterwards discharged in bankruptcy, and in due time, by leave of the court, they severally filed formal pleas setting up their respective discharges. Wolf put in his answer, claiming title to the goods and denying all fraud. Testimony was taken; and on the 13th of December, 1872, after hearing, the Chancery Court found and decreed that there was no fraud in the sale to Wolf, and dismissed the suit as to him. As Marks, Pump, & Co. had been discharged in bankruptcy, it was also dismissed as to them. From this decree Stix & Co. appealed to the Supreme Court on the 21st of March, 1873. On the 28th of March, 1874, Wolf obtained on his petition therefor a discharge under the bankrupt law. On the 28th of April, 1877, the Supreme Court, upon hearing, reversed the decree of the Chancery Court, and, after finding the amount due from Marks, Pump, & Co., and ordering a recovery, concluded as follows : —

"And this court being of opinion, as before recited, that said sale was fraudulent and void, and that said stock of goods, fixtures, &c., so attached and replevied, were subject to said attachment, and liable for complainants' said debt. And it further appearing from simple calculation that said sum of $10,000, with interest from the date of said bond, Dec. 24, 1866, to the present time, amounts to the sum of $16,200 : it is, therefore, further ordered, adjudged, and decreed by the court, that said fraudulent sale be and is hereby set aside, and for naught held, as to complainants' said debts herein against defendants Marks, Pump, & Co., and that the complainants Louis Stix & Co. in their own right, and also for the use of Rinskoff Bros. & Co., do have and recover of and from the defendant M. Wolf, and Elias Lowenstein and L. Helman his

sureties on the aforesaid replevin bond, the said sum of $16,200, the value of the property replevied, and interest thereon to this date, for which execution may issue. And it further appearing from the record that the said defendants, Marks, Pump, & Co., have been since the filing of complainants' bill discharged in bankruptcy, no execution is awarded against them for complainants' recoveries herein ; and the cost of this cause, and the court below, will be paid out of the said recovery of $16,200, against defendant M. Wolf and his aforesaid sureties on replevin bond."

On the third day of May, 1877, after this decree was rendered, Wolf and his sureties petitioned the court for leave to come in and plead in that court the discharge of Wolf in bankruptcy ; but this was denied, as no new defence could be made in that court, and it was not allowable to set up the defence of bankruptcy by any proceedings there for that purpose.

On the 26th of May, 1877, these appellants filed this bill in the Chancery Court of Shelby County, setting forth the facts substantially as above stated, and praying that the judgment or decree of the Supreme Court might be decreed to be satisfied, and of no force and effect, by reason of the discharge of Wolf in bankruptcy, and that Stix & Co. might be enjoined from enforcing the collection.

The case was afterwards removed to the Circuit Court of the United States for the Western District of Tennessee. The answer of Stix & Co. does not deny any of the material facts alleged in the bill, but sets up as a defence : —

1. That the discharge of Wolf does not release him from his liability upon the decree of the Supreme Court, because the decree is founded upon a debt created by fraud ;

2. That if Wolf is discharged, his co-complainants, the sureties upon his bond, are not ; and,

3. That the appellants have been guilty of such laches as to cut them off from relief in a court of equity.

The Circuit Court dismissed the bill, and from a decree to that effect this appeal has been taken ; the appellants assigning for error that the court below erred, 1. In dismissing the bill ; 2. In not decreeing that the appellees should be perpetually enjoined from enforcing the decree rendered by the Supreme Court of Tennessee in their favor against the appellants.

*Mr. William M. Randolph* and *Mr. Henry Craft* for the appellants.

The Code of Tennessee (sect. 3509) gave Wolf the right to execute the bond and replevy the goods, which were then in the custody of the law. His doing so cannot, therefore, by the most strained construction of the act of Congress, be regarded as creating a debt by fraud or embezzlement; *executo juris non habet injuriam.* There must be positive fraud or fraud in fact. *Neal* v. *Clark*, 95 U. S. 704. The debt arose out of the bond which he executed to the appellees, for it cannot be seriously insisted that he incurred any other liability to them; and they, as parties to that instrument, are estopped from showing that it was tainted with fraud. *Palmer* v. *Preston*, 45 Vt. 154; *Sherman* v. *Strauss*, 52 N. Y. 404; *Brown* v. *Broach*, 52 Miss. 536; *Fowler* v. *Treadwell*, 24 Me. 377; *Jones* v. *Knox*, 46 Ala. 53. The conveyance under which he held them when they were attached has no connection with the bond, and his liability upon the latter was extinguished by his discharge in bankruptcy.

In order that the bond shall remain in full force and effect as to the sureties, Wolf must be "cast" in the attachment suit. He cannot, by reason of his discharge in bankruptcy, be so cast, as under the decision of this court in *Wolf* v. *Stix* (96 U. S. 541) he is, in view of the peculiar practice which prevails in Tennessee, entitled to relief by this bill, and it furnishes him an appropriate and efficient remedy for asserting the rights and exemptions which that discharge secures. The decree of the Supreme Court has no validity against him; and it could not have been rendered if the rules of that court had permitted him to plead the discharge granted to him after the appeal had been taken, and when it was pending there. The contingency, therefore, upon which the liability of the sureties depends — a valid decree or judgment against him which can be enforced — has not arisen, and it cannot arise. The condition of the bond has been discharged, and they are released. *Smith* v. *Eakin*, 2 Sneed (Tenn.), 456; *Carren* v. *Breed*, 2 Cold. (Tenn.) 465; *Payne* v. *Able*, 7 Bush (Ky.), 344; *Odell* v. *Worten*, 38 Ga. 224; *Loring* v. *Eager*, 3 Cush. (Mass.) 188; *Carpenter* v. *Turrell*, 100 Mass. 450; *Hamilton* v. *Bryant*, 114

id. 543; *Braley* v. *Boomer*, 116 id. 127; *Williams* v. *Atkinson*, 36 Tex. 16; *Nettleton* v. *Billings*, 17 N. H. 453; *Kirby* v. *Garrison*, 1 Zab. (N. J.) 179; *Barber* v. *Rodgers*, 71 Pa. St. 362; *Herbert* v. *Horter*, 81 id. 39.

Wolf's discharge will be of no practical benefit to him, so far as the liability in question is concerned, if his sureties be bound. If they are compelled to pay, his liability to them at once accrues. *Loring* v. *Kendall*, 67 Mass. 305; *Fowler* v. *Kendall*, 44 Me. 448; *Ellis* v. *Ham*, 28 id. 385; *Leighton* v. *Atkins*, 35 id. 118; *Holbrook* v. *Fox*, 27 id. 441; *Porter* v. *McDonald*, 32 id. 418; *Pogue* v. *Joyner*, 6 Ark. 241.

*Mr. Josiah Patterson, contra.*

MR. CHIEF JUSTICE WAITE, after stating the case, delivered the opinion of the court.

This cause may be considered as supplementary to that of *Wolf* v. *Stix*, 96 U. S. 541. It is in fact the suit in chancery referred to in the opinion in that case as furnishing the complainants an appropriate remedy for enforcing their rights growing out of the discharge of Wolf in bankruptcy during the pendency of the original cause on appeal in the Supreme Court, and before the final judgment as rendered in that court. In addition to *Anderson* v. *Reaves*, cited in the argument of the other case, we are now referred to the following cases as establishing the same practice: *Ward* v. *Tunstall*, 58 Tenn. 319; *Riggs* v. *White*, 4 Heisk. (Tenn.) 503; and *Longley* v. *Swayne*, id. 506. In *Ward* v. *Tunstall* the rule is thus stated: "On the record when-presented, to which we can alone look, in our view of the case, a judgment can be rendered, and then if the debtor desires to be relieved he will find no difficulty in being protected from payment of improper judgments in the bankrupt court, or by an original proceeding in the State court, where he can make such issues as will raise the question, and as he is precluded from interposing his defence arising out of his bankruptcy, the judgment will not interfere with his case in any way." But it is unnecessary to pursue this branch of the case further, as we do not understand that the position assumed by the appellants is disputed.

The two questions which have alone been argued here in behalf of the appellees are : —

1. Whether the liability of Wolf was one created by fraud, within the meaning of sect. 5117, Rev. Stat., which provides that "no debt created by fraud . . . shall be discharged in bankruptcy." And,

2. Whether if Wolf was discharged his sureties were also.

1. As to Wolf.

In *Neal* v. *Clark* (95 U. S. 704) it was decided that " fraud," as used in this section of the bankrupt law, " means positive fraud or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement ; and not implied fraud or fraud in law, which may exist without imputation of bad faith or immorality." With this definition we are content. It is founded both on reason and authority. Clearly it does not include such fraud as the law implies from the purchase of property from a debtor with the intent thereby to hinder and delay his creditors in the collection of their debts. But if it did, such a purchase does not create a debt from the purchaser to the creditors. As between the debtor and the purchaser the sale is good, but as between a creditor and the purchaser it is void. The purchaser does not subject himself to a liability to pay to creditors the value of what he buys. All the risk he runs is that the sale may be avoided, and the property reclaimed for their benefit. To come within this exception in the Bankrupt Act the debt must be created by fraud. The debt of Wolf in this case was not created by his purchase of the goods, but by his bond to pay their value if he failed to sustain his title. In this there was no fraud. It was a right the statute gave him as the claimant of the property, and he availed himself of it in a lawful way. He thus perfected his title to the goods by agreeing to pay their value if his original purchase should be held to be invalid. A debt thus incurred cannot be said to be created by fraud. It occupies in this respect the same position it would if Wolf, acknowledging the invalidity of his original purchase, had, without suit, given his note to the creditors for the value of the goods in order to perfect his title.

The debt thus created was provable under the Bankrupt Act.

It was payable upon the happening of an event which might never occur, and was, therefore, contingent. The bond was in full force when the petition in bankruptcy was filed. The sum to be paid was certain in amount. Whether the event would ever occur which would require the payment was uncertain; but if it did occur, the amount to be paid was fixed. This clearly is such a case as was provided for in sect. 5068, Rev. Stat., which is, that "in all cases of contingent debts and contingent liabilities contracted by the bankrupt, . . . the creditor may make claim therefor, and have his claim allowed, with the right to share in the dividends, if the contingency happens before the order for the final dividend." There is nothing in the case of *Riggin* v. *Magwire* (15 Wall. 549) in conflict with this. That case arose under the bankrupt law of 1841, which was somewhat, though perhaps not materially, different from that of 1867 in this particular, and not only the happening of the event on which payment was to be made, but the amount to be paid, was uncertain and contingent. The amount to be paid depended materially upon the time when the event happened. Every thing was uncertain. The obligation in this case is to pay $10,000 and interest, if, upon the trial of the suit in the progress of which the bond was executed, it should be adjudged that the goods attached were subject to the attachment, and liable thereunder to the satisfaction of the debt sued for. As, therefore, the debt of Wolf was not created by fraud, and was provable under the act, it follows that his discharge released him from his liability on the bond. The discharge would have been a bar to a judgment against him, if, before the judgment, it could have been pleaded as a defence to the action. It follows that, under the practice which prevails in Tennessee in this class of cases, Wolf is entitled to the relief he asks for himself.

2. As to the sureties.

Sect. 5118, Rev. Stat., provides that "no discharge shall release, discharge, or affect any person liable for the same debt for or with the bankrupt, either as partner, joint contractor, indorser, surety, or otherwise." The cases are numerous in which it has been held, and we think correctly, that if one is bound as surety for another to pay any judgment that may be

rendered in a specified action, if the judgment is defeated by the bankruptcy of the person for whom the obligation is assumed, the surety will be released. The obvious reason is that the event has not happened on which the liability of the surety was made to depend. Of this class of obligations are the ordinary bonds in attachment suits to dissolve an attachment, appeal bonds, and the like. But here the bond was not given to dissolve the attachment. That was issued against the property of Marks, Pump, & Co.; and in order to get possession of the goods which had been attached, and which Wolf claimed as his own, he subjected his bond to the operation of the attachment which was to continue in force, and took the goods away. In legal effect, he purchased the interest of the creditors in the goods, and, with Lowenstein and Helman as his sureties, agreed to pay the creditors $10,000, if, upon the trial of the suit in which the attachment was issued, it should appear that they had any interest to sell. In this obligation Lowenstein and Helman were jointly bound with Wolf, and their liability was made to depend, not upon the recovery of a money judgment against him, but upon a judgment that the title he acquired by his purchase from Marks, Pump, & Co. was void as against the attaching creditors. The case stands precisely the same as it would if Wolf and his sureties had entered into a contract with the attaching creditors, in a form authorized by law, to take the goods from the sheriff and pay $10,000, if on the trial it should be determined that the attachment was valid, and this was a suit on that contract. Clearly, under such circumstances, it could not be successfully contended that Wolf's bankruptcy released his sureties.

As we understand the practice in Tennessee, the parties are to have the same relief in this action they would have been entitled to in the original suit, if, before the judgment, Wolf's discharge in bankruptcy could have been pleaded. This proceeding performs the office of such a plea, and enforces the same rights.

Had the plea been filed, it would have shown a discharge of Wolf from his liability, but not that of his sureties. They were bound not to pay any judgment which might be rendered against him, but to pay the debt he had agreed to pay in a

certain event, which had happened.   The judgment which the Code of Tennessee authorizes in such cases is upon the bond according to its tenor and effect, and if the principal debtor is discharged his sureties must respond, as in other cases of joint liability.   They are no more released by his discharge than they would be from a note or ordinary money bond which they had signed as his sureties.

No question has been raised as to the effect of the bankruptcy of Marks, Pump, & Co., and it is unnecessary, therefore, to take time to consider it.

Our conclusion is, that as to Wolf the decree is erroneous, and should be reversed, but as to Lowenstein and Helman, that it was right, and should be affirmed.

The cause is remanded with instructions to modify the decree below in such manner as to give to Wolf the benefit of his discharge in bankruptcy, as stated in this opinion, but to leave it in all other respects in force.   The costs in this appeal must be paid by the appellees; and it is

*So ordered.*