## GLENN *v.* ABELL.

*(Circuit Court, D. South Carolina. May 31, 1889.)*

**BANKRUPTCY—PROVABLE DEBTS.**

> The liability of a subscriber to corporate stock for his unpaid subscription is a provable debt in bankruptcy against the estate of such subscriber, though no assessment has yet been made, under Rev. St. U. S. § 5067, providing that all debts due and payable from the bankrupt at the commencement of proceedings or then existing and payable in the future shall be provable debts.

At Law.

*Rutledge & Rutledge*, for plaintiff.

*Wells & Orr*, for defendant.

SIMONTON, J. This is an action at law. Both parties by stipulation in writing waive a jury and submit all the issues to the court.

### FINDINGS OF FACT.

The National Express & Transportation Company was a corporation created by an act of the state of Virginia, December 12, 1865. Its capital stock was fixed at $5,000,000, with the privilege of increasing it to $10,000,000. The shares were fixed at $100 each. It could commence business when one-third of its shares were subscribed for, and

$100,000 paid thereon. No special provision is made in the charter for the time and mode of paying subscriptions. The company was organized 12th December, 1865. Twenty per cent. of each share subscribed was paid in cash. It ceased business 20th September, 1866, and made an assignment for the benefit of its creditors, including in the assignment the unpaid amounts on the subscription to its stock. The assignee not proceeding properly, a bill was filed in the court of chancery at Richmond in behalf of creditors 7th November, 1871, to enforce the collection of assets and payment of the debts. On 14th December, 1880, a decree was made establishing debts to the sum of $500,000, removing the assignee, appointing plaintiff trustee, and ordering calls on unpaid subscriptions, first for 30 per cent., then for the whole sum unpaid. The defendant was an original subscriber for 50 shares, and paid his 20 per cent. This action was brought on 2d August, 1886, to enforce payment of the remainder. On 12th January, 1876, defendant was adjudicated a bankrupt. On 4th January, 1878, he received his discharge. He sets up in defense to this action his discharge in bankruptcy and the statute of limitations.

### CONCLUSIONS OF LAW.

As to the effect of the discharge in bankruptcy. Was the defendant released from this liability? He was, if this be a debt, claim, liability, or demand provable against his estate. Rev. St. U. S. § 5119. The able counsel for plaintiff contends that the remainder of the subscription for the 50 shares made by defendant was not a debt due and payable by the defendant when he was adjudicated a bankrupt, and that it was not a debt payable at a future day, (section 5067;) but that it was a contingent liability, the contingency whereof did not occur before the final dividend on the bankrupt's estate was declared, and that the present value thereof could not be ascertained. It was therefore not a liability included in the provision of section 5068, was not a provable debt, and was not released by the discharge.

The charter of this company authorized a certain capital, divided into shares of $100 each. Every subscriber, when he made his subscription, agreed to take and pay for each share taken $100. Mor. Priv. Corp. § 271. There is nothing in the act of incorporation allowing the company or its board of directors to reduce the value or price of the several shares, or to permit a subscriber to pay a part of the subscription price and be released from further payments thereon. There is nothing in the case to create the impression that any attempt was made to do this. If any such were made, it would have been null and void as to creditors. *Sagory* v. *Dubois*, 3 Sandf. Ch. 501; *Sanger* v. *Upton*, 91 U. S. 60. Nor was there anything said or done at the time of the subscription making the payment thereof conditional or contingent. For the same reason this also would have been void as to creditors. At the time of the subscription 20 per cent. only was paid in cash. This could not discharge the liability to pay the remaining 80 per cent., nor make it depend on a contingency. *Sawyer* v. *Hoag*, 17 Wall. 620; *Curran* v. *Arkansas*, 15

How. 307. The liability to pay was fixed; the time—the precise moment when to pay—may have been uncertain. The subscription was an absolute promise, *debitum in præsenti*, a part possibly, *solvendum in futuro*. *Re Iron Works*, 20 Fed. Rep. 680. It constituted a part of the assets of the company, (*Myers* v. *Seeley*, 10 N. B. R. 411,) and as such was by it assigned for the benefit of the creditors,—became the property of the creditors, (*Sanger* v. *Upton, supra; Morgan Co.* v. *Allen*, 103 U. S. 498.) The subscriber was bound to pay it in full. If the corporation had been successful and thus in the uncontrolled direction of its own affairs, it may possibly have indulged its stockholders. Perhaps if its profits were sufficiently large it may have declared dividends with which the stockholder could have been credited upon his debt for subscription and in time have so paid up the debt. But when the insolvency occurred, in 1866, its capacity to do business was ended. It lost all self-control. Its existence continued for no other purpose than the realization of its assets and the payment of its debts. Its duty and the duty it devolved on its assignee was to collect in these assets immediately among them the unpaid subscription to stock and to pay the creditors. *Scovill* v. *Thayer*, 105 U. S. 154. This made the obligation of the subscriber to pay fixed and certain, immediate on demand; in other words, a debt. *Re Iron Works*, 20 Fed. Rep. 680. No action of the corporation, of its officers or its assignee, could discharge, alleviate, or extend this obligation. *Upton* v. *Tribilcock*, 91 U. S. 48; *Sanger* v. *Upton, supra.* But the subscriber was permitted to pay only 20 per cent. in cash. The other payments were to be made on calls by the company or its officers. The time or times, the proportion or proportions, of these calls were uncertain. It may be they were contingent upon the necessities of the company. Does this deprive the debt on the subscription of its provable character in bankruptcy? Here, then, we have an absolute promise to pay whenever called, "that is to say, a demand existing, the accrual of the cause of action thereon dependent on a contingency,"—the call. If so, it is provable in bankruptcy. *French* v. *Morse*, 2 Gray, 111. Let us assume that a call was necessary before payment could be required; that such call might never have been made, either through neglect of the corporation, its assignee, or its creditors; that thus the remainder of the subscription was "payable upon an event which might never have occurred,"—yet the contract of subscription and the liability of the defendant to pay were in full force when the petition of bankruptcy was filed. The sum for which he could be made liable was certain in amount,— $80 per share. In the language of WAITE, C. J., in *Wolf* v. *Stix*, 99 U. S. 1, this clearly is such a case as was provided for in section 5068, Rev. St., and the debt was provable in bankruptcy. See also *Parbury's Case*, 64 Eng. Ch. 87. Let the complaint be dismissed.

This result renders unnecessary any discussion of the defense of the statute of limitations.

NOTE BY THE JUDGE. In the case of *Hawkins* v. *Glenn*, 9 Sup. Ct. Rep. 739, (May 13, 1889,) the supreme court of the United States decide that the statute of limitations is not a bar. That case was brought by the same plaintiff as in our case against a subscriber in like plight.