COBB v. OVERMAN.

(Circuit Court of Appeals, Fourth Circuit. May 10, 1901.)

No. 368.

BANKRUPTCY—PROVABLE DEBT—BOND SECURING PAYMENT OF ANNUITY.

A penal bond, executed by a person who is thereafter adjudged a bankrupt, to secure the payment to the obligee of an annuity during life, is an instrument creating a fixed liability absolutely owing at the time of the filing of the petition, payable in the future, and is provable as a debt against the bankrupt's estate, under Bankr. Act 1898, § 63a, cl. 1, for the amount of the penalty stated therein, where the value of the annuity, computed on the life tables, exceeds such penalty.

Appeal from the District Court of the United States for the Eastern District of North Carolina.

P. H. Williams and E. F. Aydlett, for appellant.
G. W. Ward, for appellee.

Before GOFF and SIMONTON, Circuit Judges, and WADDILL, District Judge.

WADDILL, District Judge. The question presented for the consideration of the court is the correctness of the decision of the lower

109 F.—5

court in rejecting a claim of $4,300.98, allowed by the referee in behalf of the appellant on a debt asserted by her against the bankrupt estate. The case is one of involuntary bankruptcy. The petition was filed on the 30th of November, 1898, and adjudication had on the 30th of December of the same year. The claim was based upon the following penal bond, viz.:

"$3,000. Know all men by these presents, that I, George W. Cobb, principal, and M. B. Culpepper, surety, are held and firmly bound unto Mrs. Marie C. Cobb in the just and full sum of three thousand dollars ($3,000), to the payment whereof, well and truly to be made to the said Mrs. Marie C. Cobb, her executors, administrators, and assigns, we promise and bind ourselves, our heirs, executors, and administrators, firmly by these presents. Sealed with our seals, and dated this 28th day of April, in the year 1897. The conditions of the above obligation is such that whereas, there has grown up a dispute between the said George W. Cobb, both in his fiduciary capacity as guardian of the children of Kenneth R. Cobb and as the manager of a certain sum of money, the property of Mrs. Marie C. Cobb, the total of which is, including the fiduciary claim, $7,955.47, and which the said George W. Cobb claims to have paid in full, but which the said heirs at law and wards of the said George W. Cobb, the children of Kenneth R. Cobb, Sr., deceased, claim was not legally paid to them, but, if it was paid, was paid to their mother or others; and whereas, in consideration of the premises, and in order to finally adjust and terminate and close the said fiduciary account, and also any claim for the said sum of $7,955.47, the said Mrs. Marie C. Cobb, Kenneth R. Cobb, Jr., and Marie Celeste Cobb, his wife, Emma Heloise Anderson and James W. Anderson, her husband, Marie Celine Lewis and Arthur G. Lewis, her husband, and Lillian R. Cobb have this day signed, sealed, and delivered their receipt in full for the above-named sum, and have thereby fully released the said George W. Cobb, guardian, as to any claim they may have against him on account of his fiduciary capacity as such guardian, and have, as a further consideration, signed, sealed, and delivered unto the said George W. Cobb a deed of bargain and sale and quitclaim as to all of their right, title, and interest in and to a certain house and lot situated in the town of Elizabeth City, North Carolina, and which was formerly the property of Mrs. Emma Cobb, deceased; and whereas, in consideration of the said quitclaim and the said deed, the said George W. Cobb covenanted on his part as follows: To rent the bank building now occupied by Guirkin & Company as bankers, situated in the town of Elizabeth City, North Carolina, and to pay a monthly rental for the same of $12.50, payable monthly to Mrs. M. C. Cobb, who is authorized to receive and receipt for the same for the term of the natural life of the said Mrs. M. C. Cobb, to keep the said bank building in reasonable repair, subject to natural wear and tear, to pay the taxes and insurance on the said building and land, the said building to be insured in the sum of not less than $500, and shall also pay to the said Mrs. M. C. Cobb during her natural life the sum of $25.00 per month at the end of each month, and shall pay off and satisfy the judgment obtained in favor of one Wheeler, and assigned to George W. Cobb, against the aforesaid Kenneth R. Cobb, deceased, and duly of record in the proper clerk's office in Pasquotank county: Now, if the said George W. Cobb shall well and truly perform each and every the covenants herein named, and in the manner named, this obligation to be null and void; otherwise, to be in full force and virtue.

"G. W. Cobb.    [Seal.]
"M. B. Culpepper. [Seal.]

"Witness: J. P. Overman.

"Should Geo. W. Cobb die prior to Mrs. M. C. Cobb, in that event the rent of the bank building shall cease upon the death of said Cobb."

The referee, in his report, certifies the following facts in connection with the debt: That G. W. Cobb, the bankrupt, failed in October, 1898; that since the 1st of October, 1898, nothing has been paid

on the said bond; that M. B. Culpepper, the surety on the bond, is insolvent; that the contract is for value; and that there is due on the bond $518.75, being arrearages from the time of discontinuance of payment to February 1, 1900, less $85.25, paid on account of rent. The referee further found that the age of Mrs. Cobb, the appellant, was 50 years, and that of G. W. Cobb 56 years; that Mrs. Cobb's expectancy was 20.9 years and G. W. Cobb's expectancy was 16.7 years; and that, pursuant to section 1352 of the Code of North Carolina, Mrs. Cobb was entitled to prove her claim for $2,780.23, being the amount allowed as the value of her contract under the agreement to pay her $25 per month during her lifetime, and the sum of $1,002 for rent of the building during the lifetime of G. W. Cobb,—making a total sum of $3,782.23,—which two sums were allowed by the referee, together with the arrearages of $518.75, due as aforesaid on the bond, aggregating $4,300.98. The learned judge of the lower court excluded the claim as an entirety, holding that under the present bankruptcy act (section 63a) a liability only existed for the amount of arrearages due on the bond at the time of the filing of the petition in bankruptcy, and that no claim could be asserted, either for the installments falling due after the filing of the petition to the date of the referee's report, or for any commuted value of the payments thereafter to become due thereunder, such claims not being debts absolutely owing at the time of the filing of the petition in bankruptcy. Section 63a (1) of the bankruptcy act is as follows:

"A fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest upon such as were not then payable and did not bear interest."

The present bankruptcy act, unlike the one of 1841, does not provide specifically for the payment of annuities, or, like the act of 1867, in terms for the payment of contingent debts and liabilities generally contracted by the bankrupt; and hence the question to be determined is whether the language above quoted is sufficiently broad to include a liability of the character here presented. The debt asserted by the appellant was for the penalty of the bond, $3,000, claiming the same to be due, and that no part thereof had been paid. The statute of North Carolina (Code 1883, vol. 1, § 1352) provides a method for computing the value of an expectancy, and under such statute the referee correctly calculated the value of future installments to become due under said penal bond. The section of the bankruptcy act in question seems sufficiently broad to cover the claim. The debts referred to, which may be proved, are "a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition, whether then payable or not." We have here an instrument in writing creating a fixed liability, the maximum of which, so far as the right to recover on the particular obligation, is $3,000. The language, "absolutely owing at the time of the filing of the petition," is clear. The penalty of the bond, with the installments to become due thereon, became absolutely owing at the time of the execution of the instrument, and the language of the act,

"whether then payable or not," clearly covers the future installments to become due thereunder.

In Riggin v. Magwire, 15 Wall. 549, 552, 21 L. Ed. 233, Mr. Justice Bradley, in passing upon the question of a contingent liability under the bankruptcy act of 1841, said:

"But the better opinion is that, so long as it remained wholly uncertain whether a contract or engagement would ever rise to an actual duty or liability, and there was no means of removing the uncertainty by calculation, such contract or engagement was not provable under the act of 1841. * * * In 1843 Martin Thomas was still living, and there was no certainty that his wife would ever survive him. It was uncertain whether there would ever be any claim or demand. On what principle, then, could the covenant have been liquidated or reduced to present or probable value? If an action at law had been brought on the covenant at that time, nominal damages at most, if any damages at all, could have been recovered. It did not come within the category of annuities and debts payable in the future, which are absolute, existing claims. If it had come within that category, the value of the wife's probability of survivorship after the death of her husband might have been calculated on the principles of life annuities."

It will be observed that the learned justice treats annuities and debts payable in the future as absolute, existing claims, and further holds that the value of that class of debts can be calculated upon the principle of life annuities.

In Wolf v. Stix, 99 U. S. 1, 25 L. Ed. 309, Mr. Chief Justice Waite, in discussing the question of the liability arising under a replevin bond in an attachment proceeding to answer the judgment of the court for the value of the goods replevied, and whether such liability constituted a contingent debt provable in bankruptcy, under the act of 1867, said, at pages 7 and 8, 99 U. S., and page 313, 25 L. Ed.:

"The debt thus created was provable under the bankruptcy act. It was payable upon the happening of an event which might never occur, and was, therefore, contingent. The bond was in full force when the petition in bankruptcy was filed. The sum to be paid was certain in amount. Whether the event will ever occur which will require payment is uncertain; but, if it did occur, the amount to be paid was fixed."

We have not been referred to any authority bearing directly on this subject under the present bankruptcy act, and have found none ourselves, though the case of In re Lipke, 3 Am. Bankr. R. 569, 98 Fed. 970, incidentally touches thereon, but the conclusions we have reached herein are amply supported by reason and authority. Scovill v. Thayer, 105 U. S. 143, 156, 26 L. Ed. 968; Glenn v. Abell (C. C.) 39 Fed. 10; In re Alexander, 1 Low. 470, Fed. Cas. No. 161; In re King, Fed. Cas. No. 7,785; In re Mead, Fed. Cas. No. 9,365; Sigsby v. Willis, Fed. Cas. No. 12,849; Hare & W. Notes to Auriol v. Mills, 1 Smith, Lead. Cas. pt. 2, pp. 1245–1251. The case of Glenn v. Abell, supra, is a decision by Judge Simonton, of this circuit, involving the liability of a subscriber to corporate stock for his unpaid subscription, and in which such debt was held to be provable under the bankruptcy act of 1867. The learned judge said:

"The liability to pay was fixed; the time—the precise moment when to pay—may have been uncertain. The subscription was an absolute promise, 'debitum in præsenti'; a part, possibly, 'solvendum in futuro.' "

We are confirmed in the conclusions reached by reference to other sections of the present bankruptcy act. Section 16 provides that:

"The liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt."

Paragraph "i" of section 57 provides that:

"Whenever a creditor, whose claim against a bankrupt estate is secured by the individual undertaking of any person, fails to prove such claim, such person may do so in the creditor's name, and if he discharge such undertaking in whole or in part, he shall be subrogated to that extent to the rights of the creditor."

It would thus appear that to sustain appellee's contention in this cause would bring about this condition: that the appellant would be denied the right to assert a claim due herself, though the insolvent surety would be expressly authorized by law to make proof of a claim for the amount due her in her name for his own benefit. Such an interpretation would not be in consonance with the reason and spirit of the law, and bring about a result that could never have been contemplated by its authors. The bond in this case is a fixed obligation, its amount definite and certain, and the same was in full force and effect at the date of the filing of the petition in bankruptcy, though the liability thereunder is payable in the future, and in stated sums. The demand is clearly one the value of which can be ascertained, and hence provable under the bankruptcy act; and, the value thereof, as thus fixed, being in excess of the penalty thereof, the debt for penalty only is provable, and should have been allowed by the referee, instead of the sum reported by him.

The decision of the lower court will be reversed, and the cause remanded thereto to be proceeded with in accordance with the views herein expressed. Reversed.