STULL BROTHERS, APPELLANTS, V. WALTER R. BEDDEO ET AL., APPELLEES.*

FILED JANUARY 5, 1907. No. 14,454.

1. **Bankruptcy:** DISCHARGE: DEBTS FRAUDULENTLY CONTRACTED. One who collects rents as the agent of another is acting in a fiduciary capacity and holds the amount so collected in trust for his principal; or if, without authority so to do, he collects rents due his employer and converts the same, he becomes indebted to his em-

* Rehearing allowed. See opinion, p. 119, *post.*

ployer to the amount of the rents collected and the debt so created is fraudulently contracted. In either event a discharge in bankruptcy does not release him from the debt so contracted.

2. **Injunction:** ACTION ON BOND: DAMAGES. The plaintiffs took out an execution on a judgment in their favor against one Beddeo, and the sheriff levied on property of Beddeo sufficient to satisfy the same. Beddeo thereupon obtained an injunction against the enforcement of the judgment, and one Means became his surety on the injunction bond. Within four months from the levy of the execution Beddeo was, on proceedings duly instituted in the district court of the United States, by his creditors declared a bankrupt and subsequently duly discharged. The trustee appointed in the bankruptcy proceedings took possession of the property levied on by the sheriff and administered the same as a part of the bankrupt estate. The injunction action instituted by Beddeo was dismissed and the injunction dissolved. An action was brought on the injunction bond, in which it was sought to recover the full amount of the judgment enjoined by Beddeo and other damages alleged in consequence of the wrongful issue of the injunction. *Held,* That as the sale under Stull Brothers' execution would have taken place prior to the institution of bankruptcy proceedings against Beddeo, the injunction issued against the sale was the direct cause of Stull Brothers' inability to collect their judgment, and the amount of that judgment a proper element of damages in a suit on the injunction bond.

APPEAL from the district court for Harlan county: ED L. ADAMS, JUDGE. *Affirmed.*

*John Everson,* for appellants.

*Flansburg & Williams, contra.*

DUFFIE, C.

In January, 1903, Stull Brothers recovered a judgment in justice court of Douglas county against Walter R. Beddeo for $113, and costs taxed at $6.40. A transcript of this judgment was filed in the office of the clerk of the district court for Douglas county and afterwards duly transcribed to the district clerk's office in Harlan county, Nebraska. February 7, 1903, an execution was taken out on this judgment and delivered to the sheriff of Harlan county, who on February 18, 1903, levied on personal

property of Beddeo of sufficient value to satisfy the judgment and costs and all accruing costs. On the same day Beddeo commenced an action in the district court for Harlan county to enjoin said judgment, and procured a temporary order of injunction, which remained in force until June 6, 1904, when the injunction action was dismissed and the injunction dissolved. Means was surety on the injunction bond given by Beddeo. In his petition for an injunction Beddeo attached a transcript of the judgment against him which, among other matters, recites the following: "January 9, 1903. Plaintiff filed bill of particulars, alleging that the defendant is indebted to plaintiff in the sum of $107 for rents collected by defendant while in the employ of plaintiff, which said sum defendant has failed, neglected and refused to pay, or any part thereof, but has converted the same to his own use." June 4, 1903, a petition in involuntary bankruptcy was filed in the district court of the United States for the district of Nebraska against Walter R. Beddeo, and on September 11, 1903, Beddeo was adjudged an involuntary bankrupt, and thereafter, on proceedings duly had, he was discharged. The judgment of Stull Brothers against him, above referred to, was duly scheduled in the bankruptcy court, but no personal notice thereof was given to Stull Brothers, notice by publication only being had. Pending the proceeding in bankruptcy against Beddeo, the trustee in bankruptcy took possession of the personal property on which the sheriff of Harlan county had levied and scheduled the same as a part of the bankrupt estate, and thereafter administered upon the same. The sheriff of Harlan county returned his writ issued upon the judgment of Stull Brothers against Beddeo, setting forth that the property levied on by him had been taken by the trustee in bankruptcy and that he was unable to repossess himself of the same. This action was brought by Stull Brothers upon the injunction bond filed in the district court for Harlan county in the action in which Beddeo obtained his injunction against the enforcement of the

Stull Brothers' judgment.  The facts above set forth all appear from a stipulation entered into between the parties on the trial in the district court.  The district court gave judgment for the defendants, and Stull Brothers have taken an appeal.

If we understand the position of the defendants, it is that Beddeo's discharge in bankruptcy relieved him from liability on this judgment, as well also as upon the bond given when he procured the injunction against its collection.  The plaintiffs, on the other hand, claim that the judgment is of that character that a discharge in bankruptcy does not release Beddeo from liability thereon and that it is still a valid claim against him.  The seventeenth section of the bankruptcy act provides: "A discharge in bankruptcy shall release a bankrupt from all his provable debts, except such as  *  *  *  were created by fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity."  U. S. Comp. St., vol. 3, p. 3428, sec. 17.  The bill of particulars filed in justice court recites that Beddeo, while in the employ of the plaintiffs, collected rent due them, which he converted to his own use, and it was upon this claim that the judgment in favor of Stull Brothers was rendered.  While the bill of particulars does not disclose the nature of Beddeo's employment with Stull Brothers, it must, we think, receive one of two constructions—either that he was employed as their agent to collect rents for them, or that while he was in their employ he did, without authority, collect rents belonging to them and converted them.  In the first case he would be acting as their agent in making the collection, and the rents collected by him would be a trust fund in his hands.  In the second case, if he collected without authority and converted the rents, it would be a debt created by his fraud.  In either event we think that he falls within the exception to section 17 of the bankruptcy act, and the debt is one from which he would not be released.  *Clark v. Iselin*, 21 Wall. (U. S.) 360; *Fulton v. Hammond*, 11 Fed. 291.  It follows from

this that Stull Brothers held a valid judgment against Beddeo which they were entitled to enforce.

The next question is the measure of damages. The plaintiffs claim that, where an injunction against the collection of a judgment is procured by the execution defendant, the measure of damages in a suit upon the bond, in case the injunction is dissolved, is the amount of the judgment, interest and costs, and such other damages as have been sustained. Authorities in support of this position are cited, but from states having a statute differing from ours and where the conditions of the bond were different from the one in suit. The ordinary measure of damages has, we think, been settled in this state by our former holding. *Gibson v. Reed,* 54 Neb. 309, was an action on an injunction bond given by an execution defendant in an action to restrain the sale of property taken on execution against him. The measure of damages fixed by this court was the depreciation in value of the property levied on while the injunction was in force, reasonable fees of counsel, costs and expenses which plaintiff had incurred, or for which he had become liable in consequence of the injunction. The condition of the bond is to pay all damages sustained if the writ was wrongfully obtained, not the judgment, the collection of which is enjoined. In this case, however, Beddeo's property was levied on February 18, 1903, and had it not been for the injunction the sale would have taken place and Stull Brothers received their money upon the execution long prior to the institution of bankruptcy proceedings against Beddeo. There is nothing in the record tending to show that Stull Brothers had knowledge of the insolvency of Beddeo at the time the levy was made, nor, in fact, at any time prior to the filing of the bankruptcy proceedings against him, or that their proceedings were in fraud of the act of bankruptcy. Consequently, they could retain any money received from a sale of the property seized on their execution. The injunction which prevented the sale was, therefore, the direct cause of their inability to collect their

judgment, and they have been damaged in consequence to the full amount of that judgment.

We recommend an affirmance of the judgment of the district court.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed May 10, 1907. *Former judgment of affirmance vacated and judgment of district court reversed:*

1. Principal and Surety: DISCHARGE OF PRINCIPAL IN BANKRUPTCY. A surety on an injunction bond, given in a suit brought to restrain the enforcement of a judgment, is not released from liability thereon by the discharge of his principal in bankruptcy.

2. Injunction: ACTION ON BOND: DAMAGES. In an action on such bond, the extent to which the amount collectible on the judgment has been reduced in consequence of the injunction is a proper element of damage.

3. Bankruptcy: PRINCIPAL AND AGENT: MISAPPROPRIATION OF FUNDS. Whether a debt due from an agent to his principal for rent collected and converted to his own use is one created by fraud, embezzlement, misappropriation, or defalcation while acting in a fiduciary capacity, within section 17 of the bankruptcy act, *quære*.

4. Former opinion modified, and former judgment vacated.

ALBERT, C.

An opinion was filed in this case at the present term, which is reported *ante,* p. 114, where the facts are set out at length. The cause, coming on for hearing on a motion to vacate the judgment of affirmance entered by this court, and to enter a judgment of reversal, was reargued at length.

On the reargument the defendants renewed their contention that Beddeo's discharge in bankruptcy operated as a release of his codefendant. We do not think this con-

tention can be sustained. This is not a suit to enforce the judgment against which the injunction was leveled, but an action on the injunction bond, which the defendant Means signed as surety for Beddeo. It constitutes a new contractual obligation, wholly independent of the judgment, save to the extent that the judgment affects the question of damages, which we shall notice presently. Section 16 of the bankruptcy act (U. S. Comp. St., vol. 3, ch. 3), provides: "The liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt." The language "in any manner a surety for a bankrupt" is certainly broad enough to include a surety on an injunction bond. We have not overlooked the numerous cases cited by counsel, wherein sureties have been held to be released from liability by the discharge of their principals in bankruptcy. In each of those cases, however, it is clear that, in consequence of the discharge in bankruptcy, the contingency upon which the liability of the sureties had been dependent could never happen. *Wolf v. Stix*, 99 U. S. 1, which is included among the citations referred to, furnishes an apt illustration of that class of bonds. There the court said: "The cases are numerous in which it has been held, and we think correctly, that if one is bound as surety for another to pay any judgment that may be rendered in a specified action, if the judgment is defeated by the bankruptcy of the person for whom the obligation is assumed, the surety will be released. The obvious reason is that the event has not happened on which the liability of the surety was made to depend." But in the case at bar the condition of the bond is that "plaintiff shall pay to the defendants all damages which they may sustain by reason of said injunction, if it be finally decided that the injunction ought not to have been granted." The contingency upon which the liability of the surety was made to depend by the condition of this bond was a final decision that the injunction ought not to have been granted. That contingency happened, and the

liability of the surety on the bond became fixed on the 6th day of June, 1904, when the injunction was dissolved and the suit in which it had issued was dismissed. *Gibson v. Reed,* 54 Neb. 309; *Gyger v. Courtney,* 59 Neb. 555.

But it is argued that the condition of the bond is to pay the damages sustained by the plaintiffs when those damages are ascertained against the principal, and, as they cannot now be thus ascertained on account of the discharge in bankruptcy of the principal, the contingency upon which the liability of the surety depends can never happen. This argument, pushed to its logical conclusion, would render section 16 of the bankruptcy act above quoted almost, if not entirely, nugatory, because it is hard to conceive of a contract of suretyship to which it would not apply with as much force as to the one under consideration. The obligation is to pay the damage on the happening of a certain event. That event has happened. Section 16, *supra,* is to the effect that the discharge of the principal in bankruptcy does not release the surety from his liability to pay such damages. Before he can pay them they must be ascertained, that is, the parties must agree upon the amount or it must be established in an action on the bond. A statute which preserves a surety's liability, notwithstanding the discharge of the principal, but which at the same time forbids the taking of a step essential to enforce the liability against the surety, would be a mockery.

On the reargument the soundness of our conclusion in the former opinion that the amount of the judgment against which the injunction was directed is a proper element of damage in an action on the injunction bond, on the facts stated, is challenged. It is argued with much plausibility that the bankruptcy proceedings, and not the injunction, made it ultimately impossible to enforce the judgment. This argument appears to prove too much. The bond was given to indemnify the plaintiffs against loss by reason of the injunction, in case it was wrongfully allowed. One source of danger of loss to the judgment creditor in such cases is that the judgment, while the in-

junction is in force, may be rendered uncollectible by a transfer of the debtor's property, its seizure by other creditors or his insolvency. If the loss resulting from such causes is not covered by the bond, then the value of an injunction, as a means of avoiding a judgment, has never been fully appreciated. But it does not follow that the full amount of the judgment is always recoverable in actions of this character. A judgment might remain collectible, in whole or in part, after the dissolution of the injunction, or the injunction may have been directed against the enforcement of the judgment in a particular manner, or against particular property, leaving the judgment creditor free to enforce it in some other way or against other property of the debtor. In either case it would be the duty of the judgment creditor to make reasonable use of the means at hand to protect himself against loss and he would not be entitled to recover the full amount of the judgment in an action on the bond. The record before us does not furnish sufficient data to say that the plaintiffs are entitled to recover the full amount of the judgment. While it shows that the judgment would have been collected, but for the injunction, that it is wholly unpaid and that Beddeo is now insolvent, it does not show the extent to which the plaintiffs were restricted in the enforcement of the judgment by the injunction, nor that they might not have realized at least a portion of the judgment, notwithstanding the injunction. These matters will be cleared up, no doubt, on another trial.

We have not overlooked the cases cited by plaintiffs in support of their contention that they are entitled, in any event, to recover the full amount of their judgment. Those cases are based on bonds conditioned to pay judgments already existing or to be subsequently recovered. See *McCombs v. Allen,* 82 N. Y. 116; *Harrison v. Balfour,* 13 Miss. 301; *Hunt v. Burton,* 18 Ark. 188; *Hillyer v. Richards,* 13 Ohio, 135. In the case at bar, the bond contains a condition that the obligors shall pay such damages as the plaintiffs may sustain by reason of the in-

junction.  The distinction is obvious.  The record is clear, .
however, as to one element of damage, namely, the amount
plaintiffs are entitled to recover on account of attorney's
fees expended in resisting the injunction, which by stipu-
lation is placed at $25.  They were entitled to a judgment
of that amount at least.  Consequently, a judgment deny-
ing a recovery in any amount whatever is erroneous.

While what we have said disposes of this case, it is
proper to notice another question discussed at some length
on the reargument.  Does plaintiffs' judgment against
Beddeo fall within any of the exceptions from the general
provisions of section 17 of the bankruptcy act (U. S.
Comp. St. vol. 3, ch. 3), providing that a discharge in
bankruptcy shall operate as a release of the bankrupt
from his debts?  In the former opinion we held that it
did, but our confidence in that conclusion has been some-
what shaken on an examination of the authorities pre-
sented.  But it would seem that the question is not neces-
sarily involved in this case.  This action, as we have seen,
is on the injunction bond.  It is a new contractual obli-
gation.  It is not claimed that it was scheduled in the
bankruptcy court, nor that the plaintiffs had notice or
actual knowledge of the proceedings in bankruptcy.  It
comes, therefore, within the provisions of subdivision 3,
sec. 17, *supra,* which expressly excepts from the gen-
eral provisions for the release of the debtor debts not thus
scheduled, unless the creditor had notice or actual knowl-
edge of the bankruptcy proceedings.  If the judgment
debtor were solvent, whether the judgment had been re-
leased would be material as affecting the question of
damages, because if the judgment is still in force and is
still collectible, in whole or in part, that fact would go
in mitigation of damages.  But, as he is confessedly in-
solvent, it would seem immaterial on the question of
damages whether the judgment had been released by the
judgment debtor's discharge in bankruptcy or had become
uncollectible because of his insolvency.  The result, so far
as concerns the question of damages, would be the same

in either event. The question is one of some importance, and one upon which the court should not commit itself until it is squarely presented. For that reason, it would seem best to withdraw what has been said on that question in the former opinion, and refrain from expressing any opinion thereon at this time.

It is recommended that the judgment of the district court be reversed and the cause remanded for further proceedings according to law.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment heretofore entered is vacated, and the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED.