In re Eugene R. BACON, Cheryl A. Bacon, Debtors.

CITY SAVINGS BANK OF PITTSFIELD, MASS., Plaintiff,

v.

Eugene R. BACON, Defendant.

Bankruptcy No. 81–00045.
Adv. No. 81–0088.

United States Bankruptcy Court,
D. Vermont.

July 21, 1981.

John A. Facey, III, Rutland, Vt., for plaintiff.

Michael G. Duany, Vergennes, Vt., for debtors.

## FINDINGS OF FACT, MEMORANDUM AND CONCLUSIONS

CHARLES J. MARRO, Bankruptcy Judge.

This is an adversary proceeding on the Complaint of the Plaintiff to Determine Dischargeability of Debt. It is predicated on § 523(a)(2)(B) of the Bankruptcy Code which makes nondischargeable a debt of an individual debtor for obtaining money, property, services or an extension, renewal, or refinance of credit, by use of a statement in writing that is materially false respecting the debtor's financial condition on which the creditor to whom the debtor is liable for obtaining such money, property, services or credit reasonably relied. This matter came on for hearing after the filing of an Answer by the Debtor.

The Complaint, however, is against the debtor, Eugene R. Bacon, only.

From the testimony adduced at the hearing, the exhibits received, and the records in the case, and the concessions made by Counsel, the following Findings of Fact are made and Conclusions reached:

## FINDINGS OF FACT

The debtor, Eugene R. Bacon, with his wife, Cheryl A. Bacon, filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code on March 9, 1981 and listed among their creditors as unsecured, the plaintiff, the City Savings Bank, in the sum of $2,400.00 representing indebtedness on credit cards and an auto loan.

As of May 27, 1981, there was owing from the Debtor to the Plaintiff the sum of $4,445.75 with interest accruing from that date on a per diem basis of $1.86.

Prior to August 29, 1980, the Debtor had had several loans from the Plaintiff and had incurred indebtedness on credit cards. One of the loans was for a used Ford Fairmont stationwagon which he purchased on November 7, 1979 in a trade-in for a 1978 Dodge Challenger. This stationwagon was financed by the Plaintiff.

On August 29, 1980, after the management of the Plaintiff bank had decided that the existing loans of the Debtor should be consolidated and in response to a request by Michael A. Keppel, the loan consultant of the Plaintiff, the Debtor went to the place of business of the Plaintiff and conferred with Keppel relative to the consolidation of his loans. He thereupon signed an Application for the consolidation loan dated August 29, 1980 and on which were listed "Loans or Instalment Obligations" to the Plaintiff bank, to AVCO, to Old Colony Bank M.C. and to Commercial Credit in the total sum of $9,402.00. At the same time he signed a promissory note dated August 29, 1980 payable to the Plaintiff in the total sum of $5,136.84 and payable in 36 monthly installments of $142.69 each beginning October 11, 1980.

Both the Application for the loan and the Note were prepared by a representative of the Bank and they were ready for the Debtor's signature when he appeared at the bank on August 29, 1980. On the date of the Application the Debtor had other obligations which were not listed.

The proceeds of the consolidation loan were used by the Bank in the payment of the obligations then owing by the Debtor and he received no fresh cash at the time of the delivery of the Application and the Note to the Plaintiff. As a matter of fact, he did not even endorse the checks which were issued by the Bank and retained in payment of the consolidation debts.

Sometime prior to the date of the consolidation loan the bank did release from its security interest the Ford Fairmont stationwagon which was sold by the Debtor and the total proceeds received amounting to $4,000.00 were applied toward his then indebtedness.

## MEMORANDUM AND CONCLUSIONS

The Debtor, relying on *In Re Danns* 558 F.2d 114 (2nd Circuit, 1977) contends that the debt is dischargeable since the Debtor did not receive any "fresh cash" when the consolidation loan was closed by the Plaintiff. The Danns case was decided under the old Bankruptcy Act. However, under § 523(a)(2)(B)(i-iv) of the Bankruptcy Code which became effective on October 1, 1979 and applies to the instant case the amount of debt made nondischargeable on account of a false financial statement is not limited to "new value" extended when a loan is rolled over but the entire loan is considered as made under fraudulent conditions. 3 Collier 2nd Series 523–63, § 523.10.

The above cited section does, nevertheless, provide that before the debt may be declared nondischargeable, the creditor must show that he reasonably relied on the false financial statement.

He must also show that an intent to defraud existed. The word "false" means more than erroneous or untrue and imports an intention to deceive and a materially false statement in writing must have been knowingly or intentionally untrue to bar a discharge.

In construing section 17(a)(2) of the Bankruptcy Act, the forerunner of § 523 of the Code and couched in the same language, the intent to deceive was always material as an element of proof and by weight of authority such intent was an essential element. Intent to deceive is explicitly made an element of the false financial statement exception to discharge by § 523(a)(2)(B)(iv) which makes the exception operative only if the statement is "made or published with intent to deceive." 3 Collier 15th Edition 523–55 and 523–56, § 523.09.

The established facts in this case do not indicate that the plaintiff bank has sustained its burden. As pointed out by the debtor, the consolidation loan was made at the request of the bank's management. After this decision was reached, the debtor was called into the bank by its loan consultant and was handed both the application for the loan which was made out by a representative of the bank and the note. There was no attempt by the bank's agent to explain the necessity of signing an accurate statement of the then outstanding debts of the debtor. It appeared clear that the only purpose of the consolidation loan was to

convert a number of delinquent loans into one which was current. This was purely for the benefit of the bank. There was no advantage whatsoever to the debtor. The conclusion is inevitable that there was no intent to deceive on the part of the debtor and that the bank could not have reasonably relied on the statement which it prepared and was signed by the Debtor. To hold otherwise would thwart the very purpose of the Bankruptcy Code which is to give the debtor a "new opportunity in life and a clear field for future effort, unhampered by the pressure of pre-existing debt..." *Lines v. Frederick* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970).

The Complaint should be dismissed and judgment is being entered for the Defendant.