In re Dorothy B. WEST, Debtor.

BANK OF PUTNAM COUNTY,
Plaintiff,

v.

Dorothy B. WEST, Defendant.

Bankruptcy No. 281–03355.
Adv. No. 282–0078.

United States Bankruptcy Court,
M. D. Tennessee,
Nashville Division.

July 21, 1982.

Leon Foster, Cookeville, Tenn., for Bank of Putnam County.

Steven L. Flatt, Flatt & Jared, Cookeville, Tenn., for Dorothy B. West.

## MEMORANDUM [1]

KEITH M. LUNDIN, Bankruptcy Judge.

The issue presented is whether an incomplete credit application submitted by the debtor to the bank in February of 1980 should bar the dischargeability of the debt to the bank under 11 U.S.C.A. § 523(a)(2)(B) (West 1979).[2] Because the bank has failed to carry its burden of proof on the intent and reliance components of its cause of action, the Court overrules the objection to dischargeability.

The facts are not substantially in dispute. In February of 1980, the debtor was a sixty-year-old widow working for the Putnam County Board of Education as a school cafeteria manager. The debtor was a long-time customer of the Bank of Putnam County. She was known personally to the bank officer with whom she dealt, Mr. Bussell.

The debtor went to the bank to rework pre-existing loans with the bank. She was

---

1. The following shall constitute findings of fact and conclusions of law pursuant to Rule 752, Fed.R.Bankr.P.

2. 11 U.S.C.A. § 523(a)(2) (West 1979) reads in part as follows:

    (a) A discharge under §§ 727, 1141, 1328(b) of this title does not discharge an individual debtor from any debt

    .    .    .    .    .

    (2) for obtaining money, property, services, or an extension, renewal or refinance of credit, by

    .    .    .    .    .

    (B) use of a statement in writing
    (i) that is materially false
    (ii) respecting the debtor's or an insider's financial condition;
    (iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services or credit reasonably relied; and
    (iv) that the debtor caused to be made or published with intent to deceive.

interviewed by Mr. Bussell and a decision was reached to combine two loans in the amounts of $2,007 and $491 and to advance the debtor $500 in new funds. An installment note in the principal amount of $2,999.32 was drawn calling for 30 monthly payments of $126.25.

During the interview, Mr. Bussell filled out certain portions of a credit application form and submitted the form to Mrs. West for her signature. Mr. Bussell testified that the Bank of Putnam County had taken previous credit applications from the debtor. The older applications were at a branch of the bank and were not introduced at trial. Mr. Bussell questioned the debtor concerning portions of the credit application. He asked if she had a car note and, based on her response, indicated a $4,000 debt to Chrysler Credit with monthly payments of $124.80. Mr. Bussell listed the debtor's ownership of a house and lot and indicated "no" in response to the inquiry whether the house and lot were subject to debt. The credit application contains no entries in spaces reserved for the listing of guarantees, endorsements, etc. The sections of the application concerning salary or other income are blank. In many other blanks and boxes on the credit application, numbers and abbreviations appear which do not seem to bear any relationship to the questions asked. Mr. Bussell explained that the other entries on the credit application are his notes. The credit application is signed by the debtor. At the hearing, Mr. Bussell testified that the present balance of the note was $2,315.48, thus indicating that some payments were made on the note between February of 1980 and the filing of bankruptcy. Mr. Bussell stated that he would have concluded that "the capability is not there" had he known about the loans not listed on the credit application.

The bank established through the testimony of several witnesses that Mrs. West was indebted to at least three other creditors on February 11, 1980. Not listed on the credit application were debts to Cookeville Production Credit Association, three loans from CIT Financial Services of Cookeville, three loans from Citizens Bank and a deed of trust on the debtor's home. Some of these other loans were solely in the debtor's name. Some were co-signed by Randy West, the debtor's son. The loan documents involved indicate in some cases that the proceeds of the loans went to Randy West. Mr. Brown, a vice president with Citizens Bank, testified that he was aware that Mrs. West's son had been involved in an unsuccessful pet store operation and that Mrs. West had borrowed money for use in her son's business.

The debtor testified that she mortgaged her home in 1978 or 1979 to get her son started in a pet store. The son apparently made payments on this debt until early 1981. The pet store failed and the son filed bankruptcy. Mrs. West testified that the loans from the Cookeville Production Credit Association were also for her son—for work on his house and for a tiller used by her son. The son paid these notes for some period of time. Mrs. West testified that in the February 1980 interview she was "real busy talking" to Mr. Bussell because she was "real friendly" with him. She does not remember being asked about debts not shown on the credit application. She did not read the credit application before signing it. She testified that she received no benefit from the loans from any of her other creditors except Chrysler Credit. Her son, Randy, was making payments on all the other notes, thus, she explained, she did not think of herself as being responsible for the other loans. She testified that she thought most of the other loans were in Randy's name.

■ It is well established that a creditor seeking to sustain a § 523(a)(2)(B) objection to dischargeability of a debt must prove each of the following:[3]

---

**3.** The allocation of burdens of proof and the elements required to prove a claim of dischargeability under § 523(a)(2)(B) are similar to those established under the former Act in actions to bar dischargeability under § 17(a). *See* the discussion in *Murfreesboro Production Credit Assoc. v. Harris*, 8 B.R. 88 at 92 (Bkrtcy. M.D.Tenn. Dec. 16, 1980). *See also Waterbury*

1. The debtor made materially false representations in writing respecting the debtor's financial condition.
2. The debtor knew the representations were false at the time he made them.
3. The debtor made the representations with the intention and purpose of deceiving the creditor.
4. The creditor reasonably relied upon the debtor's materially false representations.
5. The creditor sustained loss and damages as the proximate result of the misrepresentations.

*First American Bank v. Haynes*, No. 381–01882, Adv. No. 381–0342 (Bkrtcy.M.D. Tenn. May 25, 1982); *Romersa v. Stalcup*, No. 380–02361, Adv. No. 381–0183 (Bkrtcy. M.D.Tenn. May 10, 1982); *Murfreesboro Production Credit Assoc. v. Harris*, 8 B.R. 88 (Bkrtcy.M.D.Tenn.1980); *West Building Materials v. Wynne*, No. 380–01785, Adv. No. 380–0545 (Bkrtcy.M.D.Tenn. Dec. 11, 1980). It has long been the law that this exception to the general discharge of debts is strictly construed in favor of the bankrupt. *Gleason v. Thaw*, 236 U.S. 558, 559, 35 S.Ct. 287, 288, 59 L.Ed. 717 (1915). The burden of proof is on the objecting creditor to prove every element of the objection. *Stalcup*, slip op. at 6. It is insufficient for a creditor to prove "implied fraud"; rather the plaintiff must establish intentional or positive fraud. *Stalcup*, slip op. at 6. Reliance by the creditor must be reasonable and justifiable under the circumstances. *See McDowell v. John Deere Industrial Equipment Co.*, 461 F.2d 48 (6th Cir. 1972); *Stalcup*, slip op. at 7. This Court has specifically rejected the inference recognized by some courts that "credit extension subsequent to receipt of a financial statement was made in reliance upon it." *Wynne*, slip op. at 1.

The objecting creditor in this case has failed to establish that the debtor submitted the February, 1980 financial statement with the intention and purpose of deceiving the bank. In February of 1980,

the debtor had a longstanding relationship with the bank. The credit application, though signed by the debtor, was not filled out by the debtor. Most of the application is not filled out at all. There is no salary information, no prior credit information regarding the pre-existing loans from the bank, no marital information, no credit references, and, in particular, no information regarding loans upon which the debtor is a co-maker or guarantor. There is no testimony indicating that the debtor was asked about these other matters by the bank officer. These matters are important because the unlisted debts complained of by the bank are debts involving Mrs. West's son. Though a completed credit application is, of course, not a prerequisite to relief under § 523(a)(2)(B), when the creditor asks the questions and fills out the statement and leaves blank the answers to questions which are at the heart of the lender's decision to make the loan, that creditor must overcome its own contribution to the lack of information in the statement when it challenges dischargeability under § 523(a)(2)(B). *See Ohio Grain Co. v. Gentis*, 10 B.R. 209 (Bkrtcy.S.D.Ohio 1981); *City Savings Bank of Pittsfield, Mass. v. Bacon*, 13 B.R. 559 (Bkrtcy.Vt.1981). As the debtor testified, many of the loans not listed were not considered by the debtor to be her obligations. The monies involved had been borrowed for the benefit of her son and, at least until her son later experienced financial difficulties of his own, the other loans were being paid by her son. There is no proof that Mrs. West was concealing her financial support for her son. In fact, another lender who testified at trial was well aware of the debtor's loans for her son and corroborated the debtor's perception of these other loans. The creditor's proof in this case merely imputes bad faith to the debtor—there is no affirmative showing of an intent to deceive. *Stalcup*, slip op. at 7. Though it was indeed careless for the debtor to sign a credit application so obviously incomplete in its information, carelessness falls short of intentional deceit. *See Commerce Union Bank v. Conrad*, No. 74–102, slip op. at 5 (M.D.

*Community Federal Credit Union v. Magnus-*

son, 14 B.R. 662, 667 (Bkrtcy.N.D.N.Y.1981).

Tenn. Sept. 10, 1976) (a case arising under § 17(a) of the Bankruptcy Act). The bank further contributed to the carelessness in this case by the way it filled out the form. A substantial portion of the credit application form is covered with numbers and letters which make no sense whatsoever. These notations and markings were made for the bank's internal purposes and render large portions of the application incomprehensible to the lay reader.

Similarly, it cannot be said that the creditor reasonably relied on the representations contained in this incomplete financial statement. It has been held in this district that the conclusory, uncorroborated testimony of a loan officer is generally not sufficient to establish the element of reliance in a case under § 523(a)(2)(B). *Bank of Hendersonville v. Ellis*, Nos. 78–31800, 78–31801 (Bkrtcy.M.D.Tenn. June 30, 1980) *aff'd.*, No. 80–3426–NA–CV (M.D.Tenn. July 8, 1981). Also, where there is a pre-existing satisfactory relationship between a bank and a debtor, the creditor seeking to bar the dischargeability of a debt has a substantial burden to convince the Court that the extension of further credit is made with reasonable reliance upon information contained in a financial statement, rather than in reliance upon the debtor's performance in the past. *Wynne*, slip op. at 4. The testimony of Mr. Bussell leads inescapably to the conclusion that the bank was relying on its long-standing relationship with the debtor and on Mr. Bussell's personal knowledge of the debtor. *See White County Bank of Sparta, Tennessee v. Qualls*, Nos. 77–20048, 77–20049, 77–20050, slip op. at 5 (Bkrtcy.W.D.Tenn. Feb. 2, 1979). The bank officer knew that the statements contained in the credit application were incomplete. Key information concerning the debtor's earning power and thus the debtor's ability to make monthly payments under the installment note is completely missing from the application. Mr. Bussell testified at trial that he saw no need to fill out the salary information because he knew where Mrs. West worked, what she made, etc. Mr. Bussell's admission that he relied on his personal knowledge and prior dealings with the debtor indicates a lack of reliance on the credit application. *Lincoln First Bank, N. A. v. Tomei*, 12 B.R. 592 (Bkrtcy.W.D.N.Y.1981). Though the plaintiff's loan officer testified that other credit applications and loan documents were in the bank's possession, these other documents were not produced at trial. The bank made no effort at all to investigate any of the information on the form signed by the debtor. On these facts it cannot be said that the bank reasonably relied on the credit application in its decision to combine two prior loans and advance a small additional amount to the debtor.

Accordingly, the objection to dischargeability is OVERRULED. An appropriate order will be entered.