**In re Franklin N. MANN, Debtor.**

**The FIRST NATIONAL BANK OF BOSTON, Plaintiff,**

**v.**

**Franklin N. MANN, Defendant.**

**Bankruptcy No. 83–00948–JG.
Adv. No. A83–0743–JG.**

United States Bankruptcy Court,
D. Massachusetts.

July 13, 1984.

Charles R. Bennett, Jr., Riemer & Braunstein, Boston, Mass., for plaintiff.

Howard M. Miller, Singer, Stoneman, Kunian & Kurkland, P.C., Boston, Mass., for defendant.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The debtor, Franklin Mann ("Mann" or "the debtor"), filed a Voluntary Chapter 7 petition on June 27, 1983. The First National Bank filed this Complaint to determine the nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A) and (B) of the debtor's guarantee of an obligation to the Bank in the amount of $106,982.20. The Bank alleges that the debtor submitted a false financial statement concerning his company's financial condition to the Bank. Plaintiff alleges in the alternative that to the extent that the debtor's false representations were not concerning his company's condition, the debt was incurred by actual fraud.

The debtor's Answer admits the basis of the liability to the Bank, but denies the amount and the nondischargeability of the debt. A pretrial conference was held at which time the parties agreed to bifurcate the trial. A trial was held on the nondischargeability aspect of the adversary proceeding on November 23, 1983. Based upon the testimony and documentary evidence the Court makes the following findings of fact as required by Bankruptcy Rule 7052.

The debtor was the president and sole stockholder of Mann Data Inc. ("Mann Data"). The company also had an executive vice president who was responsible for day-to-day operations of the company. Mann Data was in the business of selling software to customers who would general-

ly make payment after delivery, and often paid in installments. In March 1981, Mann Data gave a promissory note to the First National Bank ("the Bank") in the amount of $260,000, in exchange for a loan agreement, the terms of which provided that the Bank would make advances up to $260,000 based on qualified accounts receivables. In May of 1981 the debtor gave the Bank a personal guarantee of Mann Data's liabilities arising out of his loan and security agreement. In December of 1981 the parties modified the loan agreement to provide that the Bank would collect the accounts receivable, remitting 95% of the proceeds to Mann Data because the amount advanced by FNB was related to the accounts receivable. Mann Data was required to and did supply the Bank with assignments of accounts receivable, monthly profit and loss statements, and balance sheets. This information was prepared by bookkeepers, but Mann was aware of the contents of the information forwarded to the Bank. The Agreement provided that accounts of one-hundred and twenty days (120) days old would be considered by the Bank in determining the company's available borrowing base.

It is agreed that when Mann Data ceased operations in January 1983, the Bank was in a substantially over-advanced position. To date, it has received only $6,000 in collections whereas it made loans of $270,000.

The Bank contends that the company wrongfully listed three accounts receivable as fully earned on the reports submitted to the Bank when in fact they were not qualified accounts. The facts concerning the accounts are as follows. Mann Data had a contract with Posi Seal for the sale of software in the amount of $75,000. As New England representative of a manufacturer, Data Three, Mann was entitled to retain only thirty-five per cent (35%) of the balance of the $60,000 contract price. I find that at least three of the Bank's officers knew of the arrangement. Although the May 1982 receivable report lists the account in the amount of $60,000, the amount due Data Three was clearly re-flected as an offset in the profit and loss statements also submitted to the Bank.

Mann Data had a contract to provide software to General Electric in the amount of $27,000. According to Mann Data's invoice sent to General Electric in November 1982, payment to Mann Data was not due until after expiration of a ninety day trial period. This invoice was submitted to the Bank. The report for May 1982 listed $27,000 as owed by General Electric.

Mann Data had a contract dated November 1, 1981 with Theatre Communications Group to provide services in three phases on a long-term basis from 1982 to 1984. Payment of $250,000 was to be made in fixed installments. The agreed receivable reports throughout 1982 list various amounts ($18,634.97, $22,244.97) due from Theatre Communications. The September 1982 report lists nothing as owed by Theatre Communications; the December 1982 report states that $54,703.47 was owed. The Bank presented no evidence as to when the assignment of the Theatre Communications account was made, although there was testimony the assignment was sometime in the fall of 1982. From July 1981 to January 1983 there was a fluctuating balance due from Theatre Communications even though in the month of September there was no balance due Mann Data.

CONCLUSIONS OF LAW:

11 U.S.C. Section 523(a)(2)(B) provides:

"A discharge ... does not discharge an individual debtor from any debt—...

(2) for obtaining money, property, services, or an extension, renewal or refinance of credit, by

(B) use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services or credit reasonably relied; and (iv) that the debtor caused to be made to be published with intent to deceive."

A creditor seeking a determination of nondischargeability of a debt has the burden of proving each element by

clear and convincing evidence. *See House-hold Finance Corp. v. Danns*, 558 F.2d 114, 116 (2d Cir.1977); *In Re West*, 21 B.R. 872 (Bankr.D.Tenn.1982). To sustain the burden of proving that its debt comes within the false financial statement exception the creditor must establish that the debtor made or published a written statement that was materially false as to his or his insider's financial condition, that the debtor knew of such falsity and made the false statement with intent to deceive the creditor, that the property was obtained or credit extended by reason of such statement, and that the creditor actually and reasonably relied on the false financial statement to his detriment. *Matter of Klusman*, 29 B.R. 865, 867 (Bankr.S.D.Ohio 1983). I will examine each of these elements separately to determine whether Plaintiff has sustained its burden of proof.

■ The debtor contends that the corporation, Mann Data, obtained money and credit from the Bank, not Mann personally. Courts have considered whether a debtor must personally obtain the money as a result of a false financial statement in order to satisfy the element, and the majority view is that the debtor need not actually procure money or property for himself. *E.g., Harris v. Birnie*, 16 B.R. 65 (Bankr. D.Mass.1980) (Section 17(a)(2) applies even where bankrupt obtains property for another); *McCloud v. Woods*, 23 B.R. 563 (Bankr.E.D.Tenn.1982). *See L. King*, 3 Collier on Bankruptcy, Par. 523.08 (1) (15th ed. Supp.1983). Where the debtor is an officer and shareholder of a corporation and he uses a false financial statement to induce a creditor to make a loan to the corporation, the debtor is considered to have "obtained money" within the meaning of Section 523(a)(2)(B). *In Re Winfree*, 34 B.R. 879, 883 (Bankr.M.D.Tenn.1983); *Century First National Bank v. Holwerda*, 29 B.R. 486, 489, (Bankr.M.D.Fla.1983). Here, the creditor, First National Bank, made loans to the corporation based upon representations authorized by the individual debtor. Thus, it is clear that the individual debtor, Franklin Mann, has obtained money

within the meaning of this exception to discharge.

■ The Bank argues that because the debtor's reports contained erroneous information concerning three accounts receivable, the financial statement was "materially false". For the purposes of Section 523(a)(2)(B) a "materially false" financial statement is one containing an important and substantial untruth. *In Re Biedenharn*, 30 B.R. 342 (Bankr.D.La.1983); *In Re Anderson*, 29 B.R. 184 (Bankr.N.D. Iowa 1983).

■ Based upon the testimony and Exhibits, I am unable to find that the reports, when read together with the other information submitted simultaneously to the Bank, were materially false.

Accordingly, since the Bank has failed to establish the essential element of its case, material falsity, it has failed to sustain its burden of proof in this adversary proceeding. *See Bankruptcy Rule* 4005 (1983).

Even if the Court had found the reports concerning these reports materially false, the evidence and testimony precludes a finding that the Bank relied on the documentation, or that the debtor intended to deceive the Bank in these transactions. With respect to the Posi Seal account, the Bank was aware of the percentage arrangement with Data Three, which shows that it did not rely on the statement that $60,000 was owed. Concerning General Electric, the invoice sent to the Bank on its face shows the trial period, and therefore the Bank cannot assert its reliance solely on the aging report. With respect to the Theatre Communications account, there was no testimony that the Bank relied on the reports. The loan officer Mr. Coleman, who testified at trial, was not involved with the Mann Data loan, and therefore he could not state the basis of the previous loan officer's decisions to advance. He did state however, that his review of the previous loan officer's work notes showed that the Bank was in an over-advanced position "from day one" of the loan agreement. The Bank cannot claim its reliance was

reasonable where it continued to do business with Mann knowing the Bank had over-advanced. Therefore, in view of these facts, I am unable to find that the Bank reasonably relied on the reports in computing the amount of advances or that this reliance was reasonable.

 Finally, the record is devoid of any inferences from which I could find that the debtor intended to deceive the Bank when his company submitted the reports to the Bank. A representation in a financial statement must be made with intent to deceive in order for a debt to be excepted from discharge under Section 523(a)(2)(B). Where a debtor knew or should have known of errors in a financial statement and he fails to correct the error, it may be inferred that he has intended to deceive the creditor. *In Re Bradford*, 22 B.R. 899 (Bankr.D.Okla.1982); *Matter of Gray*, 22 B.R. 676 (Bankr.D.Wisc.1982). Even assuming the existence of errors in the materials forwarded to the Bank, the Bank failed to show that Mann had any knowledge which would impose upon him a duty to correct the information. He did not prepare the reports and was only aware of their contents in a general way. Thus, even if there were errors, I cannot find that he intended to deceive the Bank in submitting these financial statements. Accordingly, because the Plaintiff failed to sustain its burden on each element of this exception to discharge, judgment shall enter for the Defendant on Count I of the Plaintiff's Complaint.

Judgment shall also enter for the Defendant on Count II of Plaintiff's Complaint, which alleges that the representations concerning the receivables made to the Bank were fraudulent and thus the debt is nondischargeable under Section 523(a)(2)(A). In order for a debt to be nondischargeable under this sub-section, the misrepresentation must relate to something other than the debtor's financial condition. *See In Re Patch*, 22 B.R. 970 (Bankr.D.Md.1982). Here, since the statements concerned the collectibility of monies owed Mann Data, they concerned its financial condition. Therefore, judgment shall enter for the Defendant in this adversary proceeding.