In re Peter Lewis **TASHMAN**, Debtor.

**FIRST VERMONT BANK & TRUST COMPANY, Plaintiff,**

v.

**Peter Lewis TASHMAN, Defendant.**

**Bankruptcy No. 81–00122.**
**Adv. No. 82–0045.**

United States Bankruptcy Court, D. Vermont.

June 1, 1982.

## MEMORANDUM

CHARLES J. MARRO, Bankruptcy Judge.

This is an adversary proceeding arising from that portion of the Objection of the Plaintiff to the Plan of the Debtor specifically requesting exception to the discharge of the debt to the First Vermont Bank and Trust Company. This Objection was filed on February 25, 1982 and it is apparently predicated on § 523(a)(2)(B) which excepts from the discharge a debt for obtaining money, property, services, or an extension, renewal or refinance of credit by use of a statement in writing that is materially false respecting the debtor's financial condition on which the creditor to whom the debtor is liable reasonably relied and that the debtor caused to be made or published with intent to deceive.

### FINDINGS OF FACT

The Debtor, a certified public accountant, filed a Petition for Relief under Chapter 13 on June 12, 1981 which was converted to Chapter 11. The Schedules list the Plaintiff as a secured creditor with a claim of $12,000.00 secured by office equipment valued at $2,400.00 and another claim of $4,000.00 secured by a Volvo worth $4,800.00.

On or about November 30, 1979 the Debtor applied to the Plaintiff for a loan and in connection therewith submitted a pro forma statement of assets and liabilities which indicated a net worth of $345,000.00. As a matter of fact this was inaccurate in that the net after adding the amounts given for assets and subtracting the liabilities should be $337,400.00. In addition, the figure given for automobiles is shown as $110,000.00 which is an apparent error and should have been $11,000.00. The Plaintiff never checked the values of the assets and apparently assumed that the liabilities stated were accurate.

The Debtor had apparently been borrowing money from the Plaintiff prior to the issuance of the pro forma statement of as-

Robert P. McClallen, Mendon, Vt., for plaintiff.

James Anderson, Barre, Vt., for debtor-defendant.

sets and liabilities. This was evidenced by a term note in the sum of $13,881.49 and dated June 2, 1978 and another note in the sum of $6,500.00 dated May 3, 1979. On January 9, 1980 the Debtor executed and delivered to the Plaintiff a term note in the sum of $16,500.00 which represented a renewal of two previous notes and on the same date he also executed and delivered to the Plaintiff a collateral note in the sum of $8,000.00. Both of these notes were signed by the Debtor and his wife and were secured by a second real estate mortgage on their homestead property at Westridge Terrace in Rutland, Vermont, and by a chattel mortgage on the business furniture, fixtures and equipment of the Debtor.

In June of 1980 upon the request of the Debtor and upon payment by him to the Plaintiff of the sum of $8,000.00 the second mortgage on his homestead property was released by the Plaintiff. This was in accordance with an understanding which the Debtor had with one Paul Hardy, an employee of the bank, that the second mortgage would be discharged upon payment of the money which was borrowed by the Debtor when he gave the second mortgage to the bank. The $8,000.00 payment accomplished this result.

The Debtor requested the discharge of the second mortgage so that he could borrow money from the Rutland Savings Bank with his homestead premises as security. After payment of the $8,000.00 the bank was left with the office furniture and equipment as its only security and the value thereof has been ascertained as $2,800.00. The balance due on the indebtedness to the Plaintiff secured by office equipment is $12,000.00.

The Schedules filed by the Debtor under Chapter 11 on September 4, 1981 show total liabilities of $225,246.16 and total assets of $148,856.00. This is in contrast to the pro forma statement of assets and liabilities submitted by the Debtor to the Plaintiff on November 30, 1979 with total liabilities of $88,500.00 and assets of $425,900.00.

## DISCUSSION

The Plaintiff contends that the statement of November 30, 1979 was false, was given with intent to deceive and that the Plaintiff reasonably relied on it. Witness David Mosher, who is the overall supervising officer of the Rutland Branch of the Bank, testified that he relied on the statement in making the various loans to the Debtor. It is significant, however, that he never undertook to check the values of the assets but merely relied on the bottom line showing net worth of $345,000.00. Further, it is obvious that the figures were never checked out. It would appear that this is rather unusual, especially when a financial statement submitted indicates such a large net worth.

At least part of the discrepancy in the totals of assets and liabilities shown in the statement as against those appearing in the schedules is explained by the fact that almost two years have elapsed between the dates when they were prepared.

The Debtor has in part explained away the increased amount of liabilities by virtue of the fact that he had invested in a restaurant project operated by the Wobbly Corporation which resulted in the additional indebtedness of approximately $61,000.00. This also added to the value of his assets since his interest in this corporation at the time of purchase in October of 1979 was approximately $60,000.00. However, for one reason or another, the restaurant closed down on Washington's Birthday in 1981 with a zero value.

In his statement of November 30, 1979 the Debtor listed the value of his practice as a certified public accountant at $160,000.00. This was based in part on the goodwill of his business as well as a formula which took into account his income at that time with a flourishing practice. However, after the Wobbly Corporation venture he began to lose clients with the net result that his practice as an accountant now has a zero value to any party but himself. Without a non-competition agreement with a prospective purchaser, nothing could be realized from a sale since the Debtor could continue

operating and retain his clients. It would indeed be unusual for a lender not to raise his eyebrows after viewing a stated value of $160,000.00 for an accounting practice.

Another substantial discrepancy is in the value of the Debtor's real estate which is fixed at $150,000.00 in the statement and $115,000.00 in the schedules. As a matter of fact the appraiser for the Bank did actually value this real estate at $130,000.00 and the Debtor explained away the discrepancy by testifying that the figure of $115,000.00 in the schedules represented forced sale value.

The Debtor also incurred an additional liability of $15,000.00 as a result of the settlement with his former accounting partner upon the termination of a partnership agreement which he had with him.

■ The Court is satisfied that the Debtor has satisfactorily explained away any discrepancy between the financial statement and his schedules and that the Plaintiff has not brought itself within the purview of § 523(a)(2)(B) of the Bankruptcy Code. This requires a showing that the debtor obtained money or an extension or renewal of credit by a materially false statement in writing with the intent to deceive. It encompasses such fraud as involves moral turpitude or intentional fraud; fraud implied in law which may exist without imputation of bad faith or immorality is insufficient. It must further affirmatively appear that such representations were knowingly and fraudulently made and that they were relied upon by the Plaintiff. 3 Collier 15th Edition 539–40 § 523.08[4]. *In re Golowaty* (Bkrtcy.Vt.) 13 B.R. 781 (1981) at page 784 reading as follows:

"The Courts, under § 17(a) of the Bankruptcy Act, the forerunner of § 523 under the Code and couched in the same language have uniformly construed that false pretenses or false representations entail frauds which involve moral turpitude or intentional wrong and not those implied in law. *Underwood v. Ajax Rubber Company, Inc.*, Tex.Civ.App., 296 S.W. 964, 11 Am.B.R. (N.S.) 488; *In re Matter of Noble*, 42 F.Supp. 684, 48 Am. B.R. (N.S.) 391."

See also *In re Thomas*, 12 B.R. 765; *In re Brown*, 6 CBC 679, 682. And *In Ames v. Moir*, 138 U.S. 306, at page 311, 11 S.Ct. 311, at page 312, 34 L.Ed. 951, the Court said:

"It is the settled doctrine of this court that fraud in the act of Congress defining the debts from which a bankrupt is not relieved by a discharge in bankruptcy means 'positive fraud, or fraud in fact involving moral turpitude or intentional wrong, as does embezzlement, and not implied fraud or fraud in law, which may exist without the imputation of bad faith or immorality.' *Neal v. Clark*, 95 U.S. 704, 709 [24 L.Ed. 586]; *Wolf v. Stix*, 99 U.S. 1, 7 [25 L.Ed. 309]; *Hennequin v. Clews*, 111 U.S. 676, 682 [4 S.Ct. 576, 579, 28 L.Ed. 565]; *Strang v. Bradner*, 114 U.S. 555, 559 [5 S.Ct. 1038, 1040, 29 L.Ed. 248]; *Noble v. Hammond*, 129 U.S. 65, 69 [9 S.Ct. 235, 237, 32 L.Ed. 621]; *Upshur v. Briscoe*, post [138 U.S.] 365 [11 S.Ct. 313, 34 L.Ed. 931]."

Further, the fraud contemplated within the dischargeability exception must be proven by clear and convincing evidence. *Oriel v. Russell*, 278 U.S. 358, 362, 49 S.Ct. 173, 174, 73 L.Ed. 419; *In Re Barlick*, 1 BCD 412, 418; *In Re Brown*, 6 CBC 679, 683; *In Re Tomeo*, Bkrtcy. 1 B.R. 673.

■ The Court is convinced that the Plaintiff has failed to sustain its burden of proof as to fraud. In addition, it has reservations as to whether the Bank reasonably relied on the statement submitted by the Debtor. It finds it hard to assume such reliance, especially since the officer of the bank who processed the loans failed to check the accuracy of the figures in the statement as well as the value of the assets. Therefore, the Plaintiff is not entitled to have the debt excepted from the discharge of the Debtor.