In the Matter of Gilles I. MADORE, Debtor.

**WRIGHT-PATT CREDIT UNION, Plaintiff,**

v.

**Gilles I. MADORE, Defendant.**

**Bankruptcy No. 3–82–00819.**
**Adv. No. 3–82–0335.**

United States Bankruptcy Court, S.D. Ohio, W.D.

July 3, 1984.

James K. Hoefling, Dayton, Ohio, for defendant, Gilles I. Madore.

Martin Scharff, Dayton, Ohio, for plaintiff, Wright-Patt Credit Union.

### DECISION

ELLIS W. KERR, Bankruptcy Judge.

### FACTS

Facts can be no better stated than the Joint Stipulations. Therefore, a copy is attached as follows and incorporated herein.

### LEGAL ISSUES

Are set out with Stipulations and Facts and incorporated herein be reference.

1. Defendant, Gilles I. Madore, purchased a 1979 Chevrolet Monza in Canada about November 5, 1979.

2. Defendant executed a promissory note to the Royal Bank of Canada November 5, 1979 in the amount of $5000.00 with interest @ 15¾%.

3. Defendant executed a security agreement to the Royal Bank of Canada November 5, 1979 in the amount of $5000.00 which agreement described said 1979 Chevrolet Monza.

4. Defendant obtained Ontario, Canada auto title to said Chevrolet Monza January 26, 1979 being # OCY–695 on which no mortgage or security was noted.

5. Defendant presented said Ontario title to the Clerk of Courts of Franklin County, Ohio, March 11, 1981 and obtained Ohio Certificate of Title No. 250321083. Said Ohio Title indicated on its face that there was no lien, mortgage or encumbrance.

6. Said Ohio Certificate of Title bears a notation of a first lien to Wright-Patt Credit Union Inc. of Fairborn, Ohio on October 6, 1981.

7. Said vehicle was taken by person or persons unknown to defendant and without his permission or knowledge from the premises where defendant resided in March 1982.

8. Defendant filed his petition in Bankruptcy March 23, 1982 under Case No. 3–82–00819 in which he listed in Schedule

A–2 the Royal Bank of Canada and Wright-Patt Credit Union.

9. Defendant secured a co-signer on his note to Wright-Patt Credit Union.

10. That Plaintiff lent to the Defendant the sum of $3000.00 plus interest at the rate of 1.1667 percent per annum on the unpaid balance; that Defendant gave to Plaintiff a mortgage on said Chevrolet.

11. That there remains due and owing Plaintiff the sum of $2,718.40 plus interest at the rate of 1.1667 percent per month on the unpaid balance since March 12, 1982.

## LEGAL ISSUES

1. What effect does the Ohio Certificate of Title Law, O.R.C. 4505.01–4505.99 have upon the respective rights of Royal Bank of Canada and Wright-Patt Union?

2. Does the Ohio Certificate of Title Law grant to Wright-Patt Credit Union a prior right of possession in the event defendant fails to pay his promissory note by virtue of the fact that the Wright-Patt Mortgage was the only one recorded on the face of defendant's Ohio Certificate of Title?

3. Can Defendant be guilty of fraud in presenting his clear Ohio Title to plaintiff, at its request, in order to record thereon its mortgage lien under the provisions of Section 523(a)(2)(A), 11 U.S.C.

4. If defendant failed to inform plaintiff of his indebtness to the Royal Bank of Canada and if he failed to disclose that there was a previous valid and subsisting security agreement and note on said vehicle when he presented plaintiff with the Ohio Title and applied for a loan, does that amount to fraud on the part of the defendant within the scope of Sections 523(a)(2)(A) and (B), which makes plaintiff's debt non-dischargeable?

## CASES CITED

The incurring of a mere *debt* must be distinguished from a debt incurred to secure property for which security is given.

Cases cited by both parties have been examined. Most have fact situations entirely different from those in the case under consideration.

There was no reference to the creditor taking any security interest in the following cases: *In re West,* 21 B.R. 872 (Bankruptcy M.D.Tenn.1982); *In re McVan,* 21 B.R. 632 (Bankruptcy E.D.Pa.1982); *In re Wetmore,* 8 B.R. 629 (Bankruptcy M.D.Fla. 1981); *In re Rauch,* 18 B.R. 97 (Bankruptcy W.D.Mo.1982); *In re Quintana,* 4 B.R. 508, 2 C.B.C.2d 293 (Bankruptcy S.D.Fla. 1980); *In re Garman,* 643 F.2d 1252 (7th Cir.1980).

Security was involved in the following cases: *In re Tashman,* 21 B.R. 738 (Bankruptcy Vt.1982)—security is office equipment and Volvo; *In re Valley,* 21 B.R. 674 (Bankruptcy Mass.1982)—security is truck-tractor; *In re Miller,* 5 B.R. 424, 2 C.B. C.2d 849 (Bankruptcy W.D.La.1980)—involves materialman's lien; *In re Coughlin,* 27 B.R. 632 (1st Cir. Bankruptcy App.Panel 1983)—security was an airplane.

The Tashman case cited by defendant, 21 B.R. 738 has facts not even similar to those in the instant case. In that case real estate, office equipment, and a Volvo were involved. Of major importance were discrepancies between Schedules and pro forma statements, release of real estate, renewal of two previous notes and the listing by the C.P.A. debtor of $160,000.00 as the value of his practice. Further the court decision was based on the failure of the plaintiff to sustain the burden of proof.

Defendant also cites the Valley case 21 B.R. 674. Here again the facts were not even similar to those in the instant case. In that case security was a truck-tractor and a log skidder. There was a question as to debtor being in partnership with one Ladd. Testimony indicated that at the suggestion of the plaintiff bank's loan officer the loan documents were drafted to reflect a partnership loan. The bank alleged "partner" Ladd represented the skidder was unencumbered. It was not. The bank claimed Ladd's misrepresentations were attributable to the debtor because they were

partners. The court found the bank failed to establish all elements necessary to find non-dischargeability as to this and other matters. That case included nothing about whether there was a lien noted on a certificate of title as to a vehicle. The only vehicle was a truck. The court found debtor had no idea as to where the truck was. Nothing in that case supports the position of the defendant in the instant case.

It is the application of the law to the facts of each case in the many decisions of various courts that has resulted in so many seemingly conflicting decisions. What is required for determining non-dischargeability of debts incurred by fraud or false representation is definitely stated by Section 523(a)(2)(A) and (B) of the Bankruptcy Code. It is the facts of each case, the burden of proof, clear and convincing evidence, and other matters upon which courts rely that result in so many different decisions that any attorney can find many cases to cite to support his or her position.

## CONCLUSION

The most important evidence in this case was the November 5, 1979 instrument (Plaintiff's Exhibit 7) wherein the debtor assigned *as collateral security* to the Royal Bank of Canada the 1979 Chevrolet Monza. The debtor was designated mortgagor and the bank mortgagee. Debtor knew he had given a mortgage on this vehicle. He knew what a mortgage was. He was not *an ignorant person with little knowledge of business.* On the contrary he was in business. He and one Dasner in June 1981 formed a corporation. Debtor testified that one of the reasons he came to the United States was to go into business with Dasner. When he secured an Ohio certificate of title on the vehicle and the plaintiff's lien noted on it the debtor knew there was a "mortgage" on it in favor of the Canadian bank. And he intended it be an act which he knew was fraudulent.

Other matters indicate a "wheeling and dealing" attitude. His demeanor as a witness left a lot to be desired. In getting a loan he did not even list Royal Bank of Canada as one to whom a debt was owed. (Plaintiff's Exhibit 1). He had not forgotten. Plaintiff's Exhibit 9 is a copy of Schedule A–2 filed in his bankruptcy case pertaining to creditors holding security. Royal Bank of Canada and Wright-Patt Credit Union are both listed—the security as to each is the 1979 Chevrolet Monza.

We deem it unnecessary to discuss or make an analysis of each of the exhibits introduced in the trial of this case. It is sufficient to say that considering them all together they reveal as a whole a "picture" that can lead only to these conclusions of this court.

The history of bankruptcy law and cases indicates a tendency at times for courts to emphasize the extent of responsibility of creditors to investigate credit ratings of debtors. Too often little is said of responsibilities of the debtors. In this case what was the responsibility of the plaintiff to make a greater investigation as to the activities of the defendant in Canada as to debts incurred there? In our opinion it was not so great as the responsibility of the defendant to reveal that there was a lien on the vehicle in question of which lien the defendant was well aware.

We simply do not believe the statement of the defendant that he did not intend to deceive the plaintiff.

The failure of the defendant to inform the plaintiff of the lien was, in effect, a false representation upon which the plaintiff reasonably relied and sustained loss and damage as the result. The evidence as to this was clear and convincing.

Whether the plaintiff did or did not require a co-signer does not alter the situation. The evidence is clear that having a first lien on the vehicle was the thing most important to the plaintiff.

There was also evidence of defendant seeking other loans by giving credit information that was incomplete. This emphasizes the character of the operations by the defendant.

The debt of the defendant must be found to be non-dischargeable and we so find.

Judgment shall be granted the plaintiff for $2,718.40 with interest at 1.1667 a month.