**In re Edward MOSKOWITZ, Debtor.**

**Old Republic National Title Insurance Company, Plaintiff,**

v.

**Edward Moskowitz, Defendant.**

**Bankruptcy No. 803–81385–DTE.
Adversary No. 803–8272–478.**

United States Bankruptcy Court,
E.D. New York.

May 24, 2004.

Donohue, McGahan & Catalano, by Michael Belitsis, Jericho, NY, for Old Republic Title Insurance Co.

Lester & Fontanetta, by Roy J. Lester, Garden City, NY, for Debtor.

Kenneth P. Silverman, Jericho, NY, Chapter 7 Trustee.

### AMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT

DOROTHY EISENBERG, Bankruptcy Judge.

This matter is before the court pursuant to a motion made by the plaintiff, Old Republic National Title Insurance Company ("Old Republic" or the "Plaintiff"), seeking entry of summary judgment against Edward Moskowitz (the "Debtor") pursuant to 11 U.S.C. § 523(a)(4) and (a)(6), based on the theory of collateral estoppel. The Court denies the motion for summary judgment, finding that material issues of fact exist as to whether there was a fiduciary relationship between the Plaintiff and the Debtor which is required for finding defalcation under section 523(a)(4). The remaining claims under sections 523(a)(4) and (a)(6) require a finding that the Debtor intended to defraud the Plaintiff, which the court cannot find under the theory of collateral estoppel. However, the decision rendered by the state court action can be used to establish that the Debtor wrongfully took the funds, which caused damage to Old Republic.

## FACTS

Old Republic is a Minnesota corporation licensed to do business in New York as a title insurer. The Debtor and Kenneth Jacobowitz were the only officers and shareholders of Metro Land Services, Inc. ("Metro Land") a title abstract company. Debtor was the President of Metro Land. Metro Land was in the business of insuring title and real estate transactions, conducting real estate closings, and taking custody of deeds and other documents for recording for a fee. On August 24, 1992, Metro Land entered into a nonexclusive title agency agreement with Old Republic (the "Agency Agreement"). Pursuant to the Agency Agreement, Metro Land acted as an agent of Old Republic from August 24, 1992 through June 25, 1998. As such agent, Metro Land bound Old Republic to insure certain title and real estate transactions, conducted real estate closings, took custody of deeds, mortgages and other documents for recording, and received, as agent of Old Republic, various fees, recording charges, tax payments and other funds which were to be used for recording documents and paying certain charges, obligations and claims.

The Agency Agreement between Old Republic and Metro Land provides at Article V, subparagraph K as follows:

[Metro Land] shall be liable to [Old Republic] (1) for all losses resulting from [Metro Land's] wanton negligence and (2) for the entire loss caused by misapplication or loss of funds or documents of others transmitted to or deposited with [Metro Land] in any custodial, fiduciary or escrow capacity. In cases where [Metro Land] obtains certifications as to these searches from another title company, individual or City or County official, [Metro Land] hereby agrees that [Old Republic] shall be subrogated to [Metro Land's] rights under such certification. In all cases where [Old Republic] has, by insured closing letter or other circumstances, accepted or incurred any responsibility to third parties for [Metro Land's] proper handling of such funds, [Metro Land] will deposit such funds in a segregated trust account in a federally insured bank.

The funds were received by Metro Land for a specific purpose—to pay taxes, recording fees and other charges in connection with documents entrusted to Metro Land by third parties for recording following the closing of real estate transactions. However, the funds received by Metro Land from the third parties were not utilized for their intended purpose as they were actually disbursed to the Debtor and to Mr. Jacobowitz, or for their benefit. The documents which were to be recorded by Metro Land as an agent for Old Republic were actually never recorded and were maintained in a warehouse by Metro Land. Thereafter, Old Republic discovered that Metro Land was not acting within the scope of the Agency Agreement, and on September 8, 1998, Old Republic commenced an action against Metro Land, the Debtor, his wife, Kenneth Jacobowitz and his wife, in New York State Supreme Court., Nassau County (the "State Court Action"). Old Republic asserted causes of action sounding in fraud, conversion, misappropriation, embezzlement and breach of fiduciary duty against the various defendants in the State Court Action. On June 28, 1999, an amended complaint was filed, whereby the ad damnum clause was increased. The Debtor, who is an attorney, his wife and Metro Land (the "Remaining Defendants") were represented by the same counsel in the State Court Action. Answers were filed on behalf of the Remaining Defendants, who all had legal representation for the duration of the State Court Action.

Kenneth Jacobowitz and his wife defaulted in the State Court Action by failing to file answers and by order dated 11/29/99, the State Court granted Old Republic's motion for judgment by default against these two defendants. The remaining action was severed, and by order dated December 12, 2000, the State Court granted Old Republic's motion for summary judgment on the issues of liability against the Remaining Defendants, finding that "plaintiff is entitled to summary judgment of liability against defendants for conversion." (Plaintiff's Ex. 11). The State Court set the matter down for a hearing before a referee to determine, *inter alia*, the amount of funds "converted by defendants for their own use and benefit and the amount for which each is liable." (Plaintiff's Ex. 11).

In a written decision, the State Court made the following findings:

In opposition to plaintiff's motion for summary judgment, defendants have failed to raise a factual issue as to liability requiring a trial. Mr. Moskowitz' claimed ignorance, i.e., lack of awareness that Mr. Jacobowitz neither recorded the documents entrusted to defendant Metro nor paid the required fees as Metro was obligated to do in connection with various closings does not constitute a defense to this action. Similarly, Mr. Moskowitz' claimed failure to either review the financial records of Metro or question the propriety of issuing checks on the Metro Land Services, Inc. 'special account' to himself, his wife or others (such as American Express) is also not a defense. It is undisputed by either of the Moskowitzes that Mrs. Moskowitz did no work for defendant Metro which would entitle her to receive corporate funds. In fact, the only question raised by defendants, in the view of this court, pertains to the amount misappropriated

by defendants and diverted to their own personal benefit.

. . . .

Officers and agents of corporations are personally liable for their own acts which bring about a conversion of a third party's property, and it is no defense to personal liability that the officer or agent may have been acting on behalf of corporate principal. . . . The misappropriation of funds entrusted to an agent for application to a particular purpose is held to constitute a conversion. . . .

Where the owner(s) of a corporation abuse the privilege of doing business in the corporate form to perpetrate a wrong against plaintiff, the corporate veil may be pierced. . . . In the absence of any evidentiary proof in admissible form proffered by defendants, which is sufficient to require trial of material questions of fact, plaintiff is entitled to summary judgment of liability against defendants for conversion. . . . A question exists, however, as to damages e.g. the exact amount of funds appropriated by each of the Moskowitz defendants.

Accordingly, plaintiff's motion for partial summary judgment against the Moskowitz defendants pursuant to CPLR 3212(c) is granted as to liability. The matter shall be set down for a hearing to determine the amount of the funds received by defendant Metro in its capacity as plaintiff's agent which were converted by defendants for their own use and benefit and the amount for which each is liable.

The Debtor filed an appeal from the December 12, 2000 decision and order, and in *Old Republic National Title Insurance Co. v. Moskowitz*, 297 A.D.2d 724; 747 N.Y.S.2d 556 (2nd Dep't 2002), the Second Department affirmed the determination of liability against the Debtor with regard to

the conversion claim. The issue before the court on appeal was whether the lower court properly pierced the corporate veil to hold the Debtor and his wife liable for Metro Land's conversion. (Plaintiff's Ex. 12). The court reversed the lower court's finding of liability as to Mrs. Moskowitz, and affirmed the lower court's rulings as to the Debtor. The appellate court held:

> In order to pierce the corporate veil, a third party must show that '(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.' ... In support of its motion for partial summary judgment, the plaintiff made out a prima facie case to support piercing the corporate veil and holding the defendant Edward Moskowitz liable for Metro Land's conversion of funds.... In opposition to this motion, Edward Moskowitz has failed to raise a triable issue of fact as to his liability."

*Id.,* 297 A.D.2d at 725, 726, 747 N.Y.S.2d 556.

After making the above determinations, the Supreme Court appointed a referee to conduct an examination and to determine, *inter alia,* the exact amount converted by the Debtor for his own use and benefit. Thereafter, after reviewing the submissions made by the parties, and by report dated February 5, 2003, Adam L. Browser, Esq., the referee appointed by the State Court, specifically found that the Debtor received and converted the sum of $580,139.58 from the funds received by Metro Land as Old Republic's agent. (Plaintiff's Ex. 13). The referee also found that the funds the Debtor received from Metro Land did not constitute payment of salary to the Debtor because the Debtor failed to establish that Metro Land was entitled to receive any of the funds it collected on behalf of Old Republic.

In the meantime, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on March 6, 2003. Thereafter, by order dated March 19, 2003, the State Court confirmed the referee's findings and report in all respects. The State Court directed the entry of judgment in favor of Old Republic against Metro Land in the amount of $912,839.20, plus interest from September 8, 1998. As against Edward Moskowitz, the Court noted that he had filed a voluntary petition for relief in bankruptcy and stayed the entry of judgment against him. On May 16, 2003, judgment was entered in favor of Old Republic and against Metro Land in the amount of $1,296,631.66. (Plaintiff's Ex. 15).

The Debtor listed Old Republic on Schedule "F" of his bankruptcy schedules as having an undisputed, unsecured nonpriority claim in the amount of $580,135.00. After the petition was filed and prior to the deadline for filing such complaints, Old Republic timely filed this adversary proceeding, seeking to have the judgment debt against the Debtor deemed non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4) and (a)(6). The Debtor filed an answer, and thereafter, Old Republic filed a motion for summary judgment as to the causes of action under §§ 523(a)(4) and (a)(6) of the Bankruptcy Code. The Debtor filed opposition to the motion for summary judgment, and hearings were held on March 23, 2004 and May 4, 2004.

### DISCUSSION

Rule 56(c) of the Fed Rules of Bankr. P. provides that summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court is charged with determining whether there are any genuine issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making its determination, the court is required to view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

■■■ Old Republic relies on the theory of collateral estoppel in order to establish each element of 11 U.S.C. § § 523(a)(4) and (a)(6). Collateral estoppel can be applied in dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In order to employ the doctrine of collateral estoppel, the Court must find that the issues sought to be precluded were "necessarily decided" by the prior court and that the litigant had a "full and fair opportunity" to litigate those issues in the prior proceeding. *Conte v. Justice*, 996 F.2d 1398 (2nd Cir. 1993). The four criteria which courts in this circuit examine are:

a) whether the issues to be decided in both proceedings are identical;

b) whether the issue in the prior proceeding was actually litigated and actually decided,

c) whether there was a full and fair opportunity for litigation in the prior proceeding; and

■■■ d) whether the issue previously litigated was necessary to support a valid and final judgment on the merits. *Gelb v. Royal Globe Insurance Co.*, 798 F.2d 38 (2nd Cir.1986), *cert denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987).

The issue must have been necessary to the rendering of the prior judgment, and cannot be incidental or collateral to the prior judgment. *Halpern v. Schwartz*, 426 F.2d 102 (2nd Cir.1970). With respect to the legal burdens imposed on the parties, " 'the party seeking the benefit of collateral estoppel ... has the burden of demonstrating the identity of the issues and the necessity of their having been decided, and the party opposing its use .... has the responsive burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action.' " *Rupert v. Krautheimer (In re Krautheimer)*, 210 B.R. 37, 50 (Bankr.S.D.N.Y.1997) (citing *State of New York v. Sokol (In re Sokol)*, 113 F.3d 303, 306 (2nd Cir.1997)). (Other citations omitted).

■■■ In determining whether a party had a full and fair opportunity to be heard in the prior action, the court can consider such factors as the forum of the prior litigation, the experience of counsel, the circumstances surrounding the litigation and the foreseeability of future litigation. *In re Halperin*, 215 B.R. 321, 335 (Bankr. E.D.N.Y.1997).

Keeping these doctrines in mind, the Court shall now carefully examine the underlying judgment in question. The Debtor was found liable for conversion of Old Republic's funds while employed by Metro Land. There is no doubt that a finding of conversion was necessary to support the judgment rendered by the State Court. Further, in order to pierce the corporate veil and find the Debtor individually responsible, the State Court had to find that the Debtor either engaged in fraud or some type of wrongdoing. The court clearly made such finding in its written decision, and the decision was upheld on appeal. Both decisions are unequivocal on these issues, and leave no room for other interpretation.

The Debtor alleges that the matters decided in the State Court Action cannot be used for the purposes of collateral estoppel in any fashion. However, the Debtor has failed to meet his burden of showing that he did not have a full and fair opportunity to litigate all of the matters raised in the State Court Action. The Debtor asserts that because the State Court dealt with the matters pursuant to a motion for summary judgment, the Debtor was deprived of necessary evidentiary tools. The Court rejects the Debtor's argument that the decisions rendered in the State Court are insufficient to rely on in connection with this motion for summary judgment. A decision made pursuant to a motion for summary judgment can satisfy the requirements of collateral estoppel. *In re Halperin*, 215 B.R. at 335. The Debtor does not allege that prior counsel was incompetent or that he was precluded from litigating the matters which were the subject of the summary judgment motion before the State Court. In fact, depositions were taken in the State Court Action and extensive document discovery was conducted. Therefore, whatever was decided in the State Court Action with regard to the Debtor's conversion of the Plaintiff's funds will be granted preclusive effect in this adversary proceeding.

The referee's report was filed after two state courts rendered their decisions. The referee's report fixes the amount of the judgment, not the liability of the Debtor. Given that the referee's report was entered post petition, the Court will permit the stay to be vacated so the referee's report as to the amount of damages can be entered, and the Debtor can take an appeal if he so chooses. This, however, has no bearing on the validity of the underlying decisions rendered in the state court. The referee's report is sufficient for purposes of collateral estoppel as to damages, provided that the Debtor is given an op-portunity to appeal from the report of the referee. The Court is bound to give full faith and credit to the referee's report once it is affirmed on appeal, and the same goes for any modifications as a result of the appeal. What the Court cannot do is challenge the findings once the Court determines that the conditions for applying collateral estoppel have been met.

The Court now considers the various causes of action asserted in the complaint which are the subject of this motion for summary judgment to determine whether they are identical to the matters decided in the State Court Action.

### 1. *11 U.S.C. § 523(a)(4).*

Pursuant to 11 U.S.C. § 523(a)(4), a debtor is not discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." According to Old Republic, the Debtor's conversion of Old Republic's funds constitutes embezzlement at the very least, and also constitutes defalcation while acting in a fiduciary capacity. Embezzlement is defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Moore v. United States*, 160 U.S. 268, 16 S.Ct. 294, 40 L.Ed. 422 (1895). Clearly, fraudulent intent is a component of embezzlement. *Sec. Investor Prot. Corp. v. Nappy (In re Nappy)*, 269 B.R. 277 (Bankr.E.D.N.Y.1999). The Debtor's conversion is distinguishable from embezzlement in that wrongful intent or fraud is not a necessary component of conversion. *See Pereira v. United Jersey Bank, N.A.*, 201 B.R. 644, 675 (S.D.N.Y.1996). Conversion is described as " 'the exercise of any act of dominion in denial of another's title to the chattels, or inconsistent with such title.' " *Id.* (Other citations omitted). In order to sustain an action for conversion, it

is not essential that the defendant act wrongfully or willfully. *Id.* Therefore, the issues decided in the prior proceeding and in this particular cause of action are not identical, and Old Republic cannot rely on collateral estoppel to prove embezzlement. Although the Debtor was found to have committed a "wrongful act," that wrongful act may not have risen to the level of embezzlement. An evidentiary hearing will need to take place to decide whether the Debtor embezzled the Plaintiff's funds.

■■■■■ With respect to fraud or defalcation while acting in a fiduciary capacity, the central issue is whether the relationship between Old Republic and the Debtor constitutes a fiduciary relationship as required by this exception to dischargeability of a debt. For the purposes of determining this issue, the Court must look to both state and federal law. The scope of the concept of a fiduciary is a question of federal law, but state law determines whether or not a trust obligation exists. *In re Bennett,* 989 F.2d 779, 784 (5th Cir. 1993); *In re Caulfield,* 192 B.R. 808, 818 (Bankr.E.D.N.Y.1996). Several factors come into play in determining whether a trust relationship exists. First, the trust relationship must exist prior to the act creating the debt. Second, the act creating the debt must have been done during the course of the relationship, and third, the debt must be based on an express, technical or statutory trust. *Id.* Technical or express trusts include relationships where trust-type obligations are imposed pursuant to statute or common law. *In re Bennett,* 989 F.2d at 785. The most common types of technical or express trusts are partnerships, or obligations owed by an officer to the corporation and its stockholders. *Id.* An example of a statutory trust is one pursuant to Article 71 of the New York Lien Law. An insurance broker is also deemed to be a fiduciary under New York law. *In re Jardula,* 122 B.R. 649 (Bankr.E.D.N.Y.1990). *See also Quaif v. Johnson,* 4 F.3d 950 (11th Cir.1993), and *In re Coover,* 70 B.R. 554 (Bankr.S.D.Fla. 1987).

■■■ Courts have not found a trust to exist where the basis for the assertion of a trust is a contractual relationship only. *In re Kressner,* 206 B.R. 303, 311 (Bankr. S.D.N.Y.1997). The State Court was not asked to decide whether the Agency Agreement gave rise to a fiduciary relationship between the Debtor and the Plaintiff, and therefore collateral estoppel cannot apply to this cause of action. However, the Court has reviewed the Agency Agreement and can make certain determinations. The Agency Agreement refers to a fiduciary relationship, but it is not between the Debtor and the Plaintiff. The fiduciary relationship is between Metro Land or the Debtor and the parties paying over funds to Metro Land at the closing, which funds are to be used for certain purposes. The Agency Agreement does make references to a segregated trust account, but it is not clear if the trust account is for the benefit of the third parties or whether it is for the benefit of Old Republic. The relevant specifics of the relationship between the Debtor and the Plaintiff cannot be clearly determined from the documents themselves. Therefore, an evidentiary hearing will be required to determine whether a fiduciary relationship existed between Old Republic and Metro Land.

### 2. *11 U.S.C. § 523(a)(6).*

■■■■ Pursuant to 11 U.S.C. § 523(a)(6), debts arising from willful and malicious injury by the debtor to another entity or to the property of another entity are excepted from discharge. Like larceny or embezzlement, in order to find liability under Section 523(a)(6), the Court must

find that the Debtor acted intentionally to injure the Plaintiff or acted with malice. *In re Krautheimer,* 210 B.R. at 53. The term "malicious" means wrongful and without just cause or excuse. *Navistar v. Stelluti (In re Stelluti),* 94 F.3d 84, 87 (2nd Cir.1996).

 The decisions in the State Court Actions do not contain specific findings regarding the willfulness or malice of the Debtor because the State Court was not asked to decide these issues. The State Court decisions dealt solely with conversion, which does not require a finding of intent on behalf of the Defendant. The Plaintiff places much reliance on the *In re Stelluti* decision in support of its argument. However, the facts of *In re Stelluti* are inapposite to this case. In *In re Stelluti,* a finding was made in the underlying state court action that the debtor acted with malice. We have no such finding here, and a hearing is required to determine the intent of the Debtor in this case. It is not enough that the State Court found that the Debtor's actions were wrongful, there must be a finding of intent to deprive the Plaintiff of its funds. Therefore, the Court will hold an evidentiary hearing to determine whether the acts of the Debtor fall within the scope of 11 U.S.C. § 523(a)(6).

### CONCLUSION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

2. The Plaintiff's motion for summary judgment is denied as to liability pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6). However, the underlying State Court decisions can be used for collateral estoppel purposes to establish that the Debtor wrongfully converted the Plaintiff's funds for his own benefit.

3. The automatic stay is vacated in order to permit the referee's report to be approved by the State Court and to allow the Debtor to appeal the referee's report and decision, if the Debtor so chooses. The final decision shall be binding as to the amount of the debt owed by the Debtor to the Plaintiff.

An Order in accordance with this decision shall be entered simultaneously with this decision.